622 S.E.2d 546

**Edwin H. BROWN, Appellant/Respondent,**

v.

**GREENWOOD MILLS, INC., Respondent/Appellant.**

**No. 4034.**

Court of Appeals of South Carolina.

Heard Oct. 12, 2005.

Decided Oct. 24, 2005.

Rehearing Denied Dec. 15, 2005.

382

Linda Byars McKenzie, of Greenville, for Appellant–Respondent.

Roy R. Hemphill, of Greenwood, for Respondent–Appellant.

ANDERSON, J.:

The workers' compensation commission affirmed the order of the single commissioner awarding benefits to Edwin H. Brown (Brown) for an occupational lung disease, byssinosis, which Brown claims he developed from working with cotton for many years at Greenwood Mills, Inc. (Greenwood). The circuit court affirmed the commission's ruling that Brown's claim was within the statute of limitations, but declared the

commission should have allocated a portion of Brown's disease to his long history of cigarette smoking, a non-compensable cause. Therefore, the circuit court remanded the case to the commission for allocation. Both parties appealed.

## FACTUAL/PROCEDURAL BACKGROUND

Greenwood employed Brown from 1966 to 1982 and again from 1983 until 1998. As a Greenwood employee, Brown worked primarily with cotton in the carding, spinning, and preparation departments. While at work, he frequently was exposed to cotton dust. Brown, who smoked a pack of cigarettes a day for approximately forty-five years, stopped working in 1998 due to breathing problems.

Brown's respiratory difficulties started sometime around the early 1990s. At that time, Greenwood began performing two breathing tests a year on Brown in order to evaluate and monitor his breathing troubles. Although he quit smoking in February of 1995, Brown continued to suffer from shortness of breath, difficulty walking, and fatigue. In December 1997, Greenwood referred Brown to Dr. Cobb for treatment.

Dr. Cobb diagnosed Brown as having hyper-expanded lungs, a depressed diaphragm, and obstructive lung disease. Initially, Dr. Cobb opined that Brown's obstructive lung disease was "probably secondary to remote tobacco use with progressive airway obstruction." The doctor asseverated, "I do not think this is a specific reaction to his work environment." However, after additional testing showed Brown experienced drops "in his flow rates across the work shift," Dr. Cobb recommended that Greenwood remove Brown from work for three months to see if his absence from the job would ameliorate his condition. Brown's leave did improve his breathing. As Dr. Cobb wrote in his report of June 18, 1998:

> Mr. Brown feels better. His exertional tolerance is slightly improved and he experiences less cough at the present time.
>
> . . . .
>
> The majority of his disease is emphysema related to his previous tobacco use. . . . In addition to the emphysema from smoking, however, he does have a component of industrial related broncospasm. I think this is more likely a

nonspecific bronchitis than true byssinosis, but in any event, his underlying disease is exacerbated and has shown documented improvement on a period away from work and my recommendation is that he be removed from the present work space.

Brown did not work for Greenwood after 1998.

On December 4, 2001, Brown was treated at a Veterans' Administration Clinic in Augusta, Georgia. There, for the first time, he was diagnosed with byssinosis. The report from the VA Clinic records:

Assessment:

Hypertension. Not controlled

. . . .

Hx occupational exposure to cotton dust.44years. including carding and preparation.

Bysinnosis. hx chest tightness and pre and post shift changes in spirometry (reactivity)

Hx industrial noise exposure

Brown filed a Form 50 on February 14, 2002.

At the hearing, Greenwood presented the medical report of Dr. R.L. Galphin. Dr. Galphin believed Brown's disease "was most probably due to his long history of cigarette smoking, which may have been aggravated by exposure to respirable cotton trash dust and reactivity to that dust particularly in the latter part of his employment." He estimated that "70% of Mr. Brown's impairment is related to his long history of cigarette abuse and 30% may represent a worsening of the condition secondary to his exposure to dust in the cotton textile industry." However, Dr. Galphin never examined Brown. His opinion was based solely on a review of records from Greenwood and Dr. Cobb.

The single commissioner issued an order, which stated:

After reviewing all of the evidence in the case, it is the finding of the undersigned that the claimant's respiratory disease arose out of and in the course of his employment; said disease was due to hazards of the employment which are excess of hazards normally incident to normal employees. The disease is peculiar to the textile mill wherein they were running cotton products. There have been numerous

cases of chronic obstructive pulmonary disease (byssinosis) arising out of inhalation of the organic or inorganic dust in the textile industry. See, *Hanks v. Blair Mills, Inc.*, 286 S.C. [3]78, 335 S.E.2d 91 (1985)[.] The hazards causing this condition are peculiar to the textile industry in which the claimant was employed for many years. Based on the opinions of the doctors at the VA Clinic, it is found that the claimant's respiratory disease was a result of the exposure to cotton dust and trash in his employment. The conditions of his exposure are peculiar to his employment. Most particularly, his pre and post work pulmonary function studies, done by the employer, show he was having a reaction to the environment. Further, the doctors at the VA Clinic opined he had severe COPD as a result of many years of textile work.

The commissioner found that the statute of limitations had not run prior to the filing of Brown's claim because he was not definitively diagnosed with byssinosis until December 4, 2001. Indeed, Dr. Cobb, in 1998, had suggested, "this is more likely a nonspecific bronchitis than true byssinosis," and that "[h]is primary disease is emphysema related to underlying previous tobacco use."

The appellate panel affirmed the single commissioner's ruling with the following language:

> In an Appellate Review, the Commission has the power to weigh the evidence as presented at the initial hearing, and, after careful review in the instant case, the Commission, by unanimous vote, has determined that all of the Hearing Commissioner's Findings of Fact and Rulings of Law are correct as stated. Accordingly, they shall become, and hereby are, the law of the case; and, therefore, the Order is sustained in its entirety.

Greenwood appealed to the circuit court arguing (1) the statute of limitations had run on Brown's claim, and (2) the panel erred in failing to determine the proportion of Brown's disability allocable to non-compensable causes—i.e., smoking—pursuant to sections 42–11–90 and –100 of the South Carolina Code. The circuit court affirmed the panel as to the finding that the claim was within the statute of limitations, but reversed on the award of benefits:

In this case, the record is replete with evidence of the Claimant's forty-five (45) year history of smoking, a non-compensable cause, and its effect on his lungs. Even if the Commission dismissed Dr. Galphins's opinion as not being credible, Dr. Cobb's June 19, 1998 opinion that the majority of Claimant's lung disease was non-compensable cannot be ignored. Indeed, the employer does have the burden of proving not only the interplay of a non-compensable cause, but also its proportion to the overall disability. *Hanks v. Blair Mills, Inc.*, 286 S.C. 378, 335 S.E.2d 91 (Ct.App.1985). In this case, the employer clearly met that burden, and no substantial evidence exists in the record to support the Commission's findings to the contrary. As such, in light of the statutes' mandatory language, the employer was entitled to a determination of the proportion allocable to the non-compensable cause, smoking, and a corresponding reduction of compensation owed to the Claimant.

Accordingly, the circuit court remanded the case to the commission "with the specific direction to make the necessary findings as to the apportionment between compensable versus non-compensable causes, and a corresponding reduction in the Claimant's disability award."

## LAW/ANALYSIS

### I. Appealability

█ Greenwood asserts, as a threshold matter, that the circuit court's order remanding the case to the commission is interlocutory and not immediately appealable. We disagree.

The rule governing the appealability of a circuit court order remanding a case to the commission is set forth in *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 446 S.E.2d 618 (1994):

S.C.Code Ann. § 1–23–390 (1986) provides:

An aggrieved party may obtain a review of any final judgment of the circuit court under this article by appeal to the Supreme Court. The appeal shall be taken as in other civil cases.

Accordingly, we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appeal-

able. *Owens v. Canal Wood Corp.,* 281 S.C. 491, 316 S.E.2d 385 (1984); *Hunt v. Whitt,* 279 S.C. 343, 306 S.E.2d 621 (1983).

*Montjoy,* 316 S.C. 52, 446 S.E.2d 618.

 The question here is whether the circuit court order is a "final judgment" under section 1–23–390. Generally, an order is a final judgment on one or more issues if it constitutes an ultimate decision on the merits. In *Owens v. Canal Wood Corp.,* 281 S.C. 491, 316 S.E.2d 385 (1984), one of the two cases cited by the *Montjoy* court, the supreme court found "[t]he order of the circuit court *does not involve the merits of the action.* It is therefore interlocutory and not reviewable by this Court for lack of finality." *Owens,* 281 S.C. at 492, 316 S.E.2d at 385 (emphasis added) (citations omitted). Similarly, in *Hunt v. Whitt,* 279 S.C. 343, 306 S.E.2d 621 (1983), the supreme court held that "[b]ecause the interlocutory order of the circuit court *does not involve the merits* of the action, it is not reviewable by this Court for lack of finality." *Id.* (emphasis added) (citations omitted). Accordingly, in determining whether the court's order constitutes a final judgment, we must inquire whether the order finally decides an issue on the merits.

 "An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case." *Green v. City of Columbia,* 311 S.C. 78, 427 S.E.2d 685 (Ct.App.1993) (citing *Henderson v. Wyatt,* 8 S.C. 112 (1877)). In the case *sub judice,* the order of the circuit court finally determined an issue on the merits—that Brown's smoking, a non-compensable cause, contributed to his disability. The court noted "the employer does have the burden of proving . . . the interplay of a non-compensable cause" and found "the employer clearly met that burden[.]" Consequently, the circuit court ruled that "the employer was entitled to a determination of the proportion allocable to the non-compensable cause[.]" The case was remanded, not for evaluation whether apportionment was appropriate, but "with specific direction *to make the necessary findings as to the apportionment* between compensable versus non-compensable causes, *and a corresponding reduction* in the Claimant's disability award."

The court's order mandates apportionment. This ruling is a decision on the merits because it decides with finality whether Greenwood is required to reduce its compensation under sections 42–11–90 and –100. Although the judge left the percentage of apportionment to the commission on remand, the panel would have no choice but to allocate some part of Brown's disability to the non-compensable cause. Accordingly, the circuit court's order constitutes a final decision on the issue of apportionment and is appealable.

## II. Statute of Limitations

Greenwood maintains that Brown filed his claim outside the period of the statute of limitations.

Section 42–15–40 provides:

The right to compensation under this title is barred unless a claim is filed with the commission within two years after an accident, or if death resulted from accident, within two years of the date of death. *However, for occupational disease claims the two-year period does not begin to run until the employee concerned has been **diagnosed definitively** as having an occupational disease and has been **notified of the diagnosis.***

S.C.Code Ann. § 42–15–40 (Supp.2004) (emphasis added).

In *McCraw v. Mary Black Hospital,* 350 S.C. 229, 565 S.E.2d 286 (2002), our supreme court proclaimed that section 42–15–40 "requires that the employee be: (1) 'diagnosed definitively as having an occupational disease,' and (2) 'notified of the diagnosis[.]'" 350 S.C. at 235–36, 565 S.E.2d at 289. In *McCraw,* Carolyn McCraw, a nurse, began experiencing breathing problems associated with handling potent chemicals in the endoscopy unit of the hospital where she was employed. Dr. Applebaum, who worked with McCraw, noticed her breathing difficulties. McCraw discussed her condition with Dr. Applebaum on an informal basis until September of 1991 when she transferred out of the endoscopy unit. She then began seeing Dr. Applebaum, and on November 19, 1992, McCraw was admitted to the hospital for treatment of asthma and pneumonia. She did not file a workers' compensation claim until November 14, 1994. Although McCraw began to experience her work-induced breathing ailments more than

two years before filing her claim, the supreme court found that the statute of limitations did not bar her from benefits:

Considering the record as a whole, it simply is not reasonable to conclude that Dr. Applebaum's informal conversations with McCraw in the endoscopy unit constituted a definitive diagnosis, or that McCraw's understanding her asthma was affected by the workplace chemicals somehow constitutes notification of definitive diagnosis of an occupational disease.

*Id.* at 236, 565 S.E.2d at 289.

Here, Brown was not definitively diagnosed as having byssinosis until his December 2001 visit to the VA Clinic. Greenwood asserts that Brown's claim is barred because he understood in 1998 his deteriorated breathing condition was related to his work environment. However, both the statute and precedent make clear that in an occupational disease context, the statute of limitations begins to run only upon notification of a definitive diagnosis. As stated by the court in *McCraw*, "it simply is not reasonable to conclude" a claimant's "understanding" that his condition "was affected by the workplace" environment "somehow constitutes notification of definitive diagnosis of an occupational disease." 350 S.C. at 236, 565 S.E.2d at 289. Brown was given a definitive diagnosis on December 4, 2001, and he filed his Form 50 on February 14, 2002. Therefore, his claim is timely, and we affirm the circuit court as to the statute of limitations issue.

### III. Allocation Under Sections 42-11-90 and -100

█ Section 42-11-90 states:

When an occupational disease prolongs, accelerates or aggravates or is prolonged, accelerated or aggravated by any other cause or infirmity not otherwise compensable, the compensation payable for disability or death shall be limited to the disability which would have resulted solely from the occupational disease if there were no other such cause or infirmity and shall be computed by the proportion which the disability from occupational disease bears to the entire disability.

S.C.Code Ann. § 42-11-90 (1985). Similarly, code section 42-11-100 reads, in pertinent part,

Compensation payable for disability from an occupational disease must be the same as that provided for an injury under this title. No compensation is payable:

(1) For the degree of disability resulting from noncompensable causes. . . .

S.C.Code Ann. § 42–11–100 (Supp.2004).

The case *sub judice* is similar to *Hanks v. Blair Mills, Inc.*, 286 S.C. 378, 335 S.E.2d 91 (Ct.App.1985). Charles Hanks was exposed to cotton dust for approximately fifteen years as an employee of Blair Mills. In addition, he smoked a pack and a half of cigarettes a day "for years." Hanks was diagnosed with byssinosis and was awarded benefits. The commission did not apportion the award under section 42–11–90, and this Court affirmed. We observed:

> The issue of the extent of disability is a question of fact to be proved as any other fact is proved. *Arnold v. Benjamin Booth Co.*, 257 S.C. 337, 185 S.E.2d 830 (1971). This Court's function is not to resolve conflicts in the evidence but to determine from the record if substantial evidence supports the agency's finding.
>
> . . . .
>
> The evidence revealed that Hanks had smoked a pack and a half of cigarettes a day for years and that smoking can cause or contribute to chronic obstructive lung disease. Appellants, however, presented no evidence of the percentage of Hanks' disability that was caused by smoking. *Mizell v. Raybestos–Manhattan, Inc.*, 281 S.C. 430, 315 S.E.2d 123 (1984). We thus find no merit in the appellants' contention that the court should have apportioned the award based on Section 42–11–90.

286 S.C. at 384–85, 335 S.E.2d at 95.

In the instant case, the single commissioner was cognizant of section 42–11–90. Greenwood raised the statute and the issue of allocation at the hearing, and the commissioner responded:

> And in the pretrial conference you had stated your position in regards to the apportionment and I advised that I would like just a short brief, five, ten pages, on the issue of apportionment. And if you would submit that to me in ten

or fifteen days. And Ms. McKenzie [counsel for Brown] is certainly entitled to do a brief on her position as well.

Moreover, the commissioner's order expressly finds, as a conclusion of law,

6. *Per § 42–11–90,* the claimant is entitled to compensation for his disability as being related to and as a result of an occupational disease resulting from cotton dust exposure. (See, *Hanks v. Blair Mills, Inc.,* 286 S.C. 378, 335 S.E.2d 91, [(]1985[)][.])

(Emphasis added.) The commissioner's order concluded:

[T]he claimant's respiratory disease arose out of and in the course of his employment; said disease was due to hazards of the employment which are excess of hazards normally incident to normal employees.... Based on the opinions of the doctors at the VA Clinic, it is found that the claimant's respiratory disease was a result of the exposure to cotton dust and trash in his employment.

■ The linchpin of this case is the standard by which we must review factual determinations of the commission. The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the workers' compensation commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); *Bass v. Isochem,* 365 S.C. 454, 617 S.E.2d 369 (Ct.App.2005); *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 599 S.E.2d 604 (Ct.App.2004). A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Bursey v. South Carolina Dep't of Health & Envtl. Control,* 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004); S.C.Code Ann. § 1–23–380(A)(6)(e) (2005). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the appellate panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 363 S.C. 612, 611 S.E.2d 297 (Ct.App.2005); *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 593 S.E.2d 491 (Ct.App.2004); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478

S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (2005).

The substantial evidence rule of the APA governs the standard of review in a workers' compensation decision. *Frame*, 357 S.C. at 527, 593 S.E.2d at 494; *Corbin v. Kohler Co.*, 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); *see also Lockridge v. Santens of America, Inc.*, 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001) ("Any review of the commission's factual findings is governed by the substantial evidence standard."). Pursuant to the APA, this Court's review is limited to deciding whether the appellate panel's decision is unsupported by substantial evidence or is controlled by some error of law. *See Rodriguez v. Romero*, 363 S.C. 80, 610 S.E.2d 488 (2005); *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000); S.C.Code Ann. § 1–23–380(A)(6) (2005); *see also Grant v. Grant Textiles*, 361 S.C. 188, 191, 603 S.E.2d 858, 859 (Ct.App.2004) ("A reviewing court will not overturn a decision by the workers' compensation commission unless the determination is unsupported by substantial evidence or is affected by an error of law."); *Lyles v. Quantum Chem. Co. (Emery)*, 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (noting that in reviewing decision of workers' compensation commission, court of appeals will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.*, 357 S.C. 619, 594 S.E.2d 272 (2004); *Jones v. Georgia–Pacific Corp.*, 355 S.C. 413, 586 S.E.2d 111 (2003); *Etheredge v. Monsanto Co.*, 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002); *Broughton v. South of the Border*, 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999).

The appellate panel is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Gibson*, 338 S.C. at 517, 526 S.E.2d at 729; *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999). The final determination of witness

credibility and the weight to be accorded evidence is reserved to the appellate panel. *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000); *Parsons v. Georgetown Steel,* 318 S.C. 63, 456 S.E.2d 366 (1995); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495; *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 519 S.E.2d 102 (1999); *DuRant v. South Carolina Dep't of Health & Envtl. Control,* 361 S.C. 416, 604 S.E.2d 704 (Ct.App.2004); *Corbin,* 351 S.C. at 618, 571 S.E.2d at 95; *Muir,* 336 S.C. at 282, 519 S.E.2d at 591. Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive. *Hargrove,* 360 S.C. at 290, 599 S.E.2d at 611; *Etheredge,* 349 S.C. at 455, 562 S.E.2d at 681.

 The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.,* 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.,* 335 S.C. 46, 515 S.E.2d 532 (1999); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495. It is not within our province to reverse findings of the appellate panel which are supported by substantial evidence. *Pratt,* 357 S.C. at 622, 594 S.E.2d at 274–75; *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637.

The parties presented the commissioner with conflicting medical opinion evidence as to the cause of Brown's disability. Whether a history of cigarette smoking was a causal factor in Brown's disease was a factual question which the commissioner and the commission answered in the negative. The commissioner noted that byssinosis is a condition peculiarly associated with cotton dust exposure. Additionally, Brown stopped smoking in 1995, yet his condition worsened between 1995 and 1998. Tests demonstrated that his work environment negatively affected Brown's breathing. Finally, the opinion of the doctor from the VA Clinic, the only doctor to definitively diagnose Brown with byssinosis, stated that Brown's condition was the result of forty-four years of exposure to cotton dust.

Although the circuit court might have ruled differently had it been the fact finder, it was error for the court to substitute

its factual judgment in place of the commission's. As we observed in *Stone v. Traylor Brothers, Inc.,* 360 S.C. 271, 600 S.E.2d 551 (Ct.App.2004), "Admittedly, the Commission could have reached a different conclusion. However, that fact does not alter the scope of our inquiry." *Id.* (citing *Palmetto Alliance, Inc. v. South Carolina Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984) ("[The] possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.")).

Based on the evidence presented, reasonable minds could conclude Brown's byssinosis is the result of his exposure to cotton dust without regard to his history of smoking. The commission, aware of the apportionment statutes, made a factual determination which is supported by substantial evidence. Accordingly, that portion of the circuit court's order reversing the commission's ruling on section 42–11–90 is reversed and the commission's award of benefits is reinstated.

## CONCLUSION

Based on the foregoing, the order of the circuit court is affirmed in part and reversed in part, and the commission's order is reinstated.

**AFFIRMED IN PART and REVERSED IN PART.**

HUFF and WILLIAMS, JJ., concur.