733 S.E.2d 200

Cathy C. BONE, Respondent,

v.

U.S. FOOD SERVICE and Indemnity Insurance
Company of North America, Petitioners.

No. 27153.

Supreme Court of South Carolina.

Heard Jan. 26, 2012.

Decided Aug. 1, 2012.

Michael E. Chase and Carmelo B. Sammataro, both of Turner, Padget, Graham & Laney, of Columbia, for Petitioners.

Blake A. Hewitt and John S. Nichols, both of Bluestein, Nichols, Thompson & Delgado, of Columbia, for Respondent.

Justice BEATTY.

In this workers' compensation case, the employer and its carrier appealed from the circuit court's order that determined the employee's claim was compensable and remanded the matter to the South Carolina Workers' Compensation Commission for further proceedings. The Court of Appeals dismissed the appeal as interlocutory in *Bone v. U.S. Food Service*, S.C. Ct.App. Order dated June 30, 2010. This Court has granted the petition of the employer and its carrier for a writ of certiorari to review the decision of the Court of Appeals. We affirm.

## I. FACTS

Cathy C. Bone filed a workers' compensation claim form (Form 50) dated August 7, 2007 alleging that she injured her back on Tuesday, June 26, 2007 while employed with U.S. Food Service. Her job consisted of power washing and cleaning the insides of truck trailers that transported food. Bone alleged that she hurt her back when she lifted two pallets inside a trailer to clean under them.

According to Bone she did not report the incident immediately because she needed to continue working and thought she would be okay, but thereafter she developed increasing pain. On Tuesday, July 3, 2007, Bone reported the injury to one of her supervisors, Richard Thompson, shortly after she arrived

at work. The same morning she reported her injury, Bone had a flat tire on her way to work, and she called in to advise her office of this fact.

The employer, U.S. Food Service, and its carrier, Indemnity Insurance Co. of North America (collectively, "Employer"), denied Bone's claim, disputing that she had injured her back on June 26 and asserting the injury occurred when her tire was changed on July 3.

At the hearing in this matter, Bone testified that she did not physically change the tire herself. Rather, a gentleman who was in the parking lot of a nearby business where she had pulled off the road had changed the tire for her. However, Bone's supervisor, Thompson, noted Bone was crying when she reported her injury. In addition, he recalled that she had told him that "she had to change her tire on her truck," which he interpreted to mean that she had personally changed the tire. Bone disagreed with this interpretation as well as with the exact wording of her statement. The supervisor did not dispute the fact that Bone had told him that her back injury occurred on June 26 when she lifted the pallets at work.

The hearing commissioner found Bone had failed to meet her burden of showing that she had sustained an injury by accident arising out of and in the course of her employment. An Appellate Panel of the Commission upheld the hearing commissioner's findings and conclusions in full.

Bone appealed to the circuit court, which concluded Bone had sustained a compensable injury, and it reversed and remanded the matter to the Commission for further proceedings consistent with this determination. In its order, the circuit court observed the Commission had denied the claim after "ostensibly finding [Bone] injured her back while changing her tire on July 3." However, the circuit court found Bone gave consistent statements to Employer and her physicians that her injury occurred on June 26, and further found there was "no evidence in the record, let alone substantial evidence, that [Bone] injured her back while changing a tire on the way to work on July 3, 2007." The circuit court rejected Employer's contention that the supervisor's testimony and the hearing commissioner's finding regarding credibility supported the decision below, stating credibility "goes only to the weight

afforded [Bone's] testimony and in no way establishes [that her] injury occurred on July 3."

The Court of Appeals dismissed Employer's appeal of the circuit court's order on the basis it was interlocutory and did not dispose of the entirety of the case with finality. It held a general appealability statute allowing appeals from interlocutory orders was not applicable in matters before the Commission. *Bone v. U.S. Food Service,* S.C. Ct.App. Order dated June 30, 2010. In making this determination, the Court of Appeals relied primarily upon the following precedent: *Charlotte–Mecklenburg Hospital Authority v. South Carolina Department of Health and Environmental Control,* 387 S.C. 265, 692 S.E.2d 894 (2010) (holding the Administrative Procedures Act is controlling in agency matters and S.C.Code Ann. § 14–3–330, a general appealability statute, is not applicable to agency appeals); *Montjoy v. Asten–Hill Dryer Fabrics,* 316 S.C. 52, 446 S.E.2d 618 (1994) (stating a circuit court order remanding a case for additional proceedings before an administrative agency is not immediately appealable); and *Good v. Hartford Accident and Indemnity Co.,* 201 S.C. 32, 21 S.E.2d 209 (1942) (noting an order that determines issues of law while leaving open questions of fact is not a final order).

## II. LAW/ANALYSIS

Employer contends the decision of the Court of Appeals should be reversed and the appeal reinstated because the circuit court's order was immediately appealable. Employer asserts the decision of the Court of Appeals is based upon a misapplication of precedent. Because of lingering confusion in this area that has arisen after the passage of the Administrative Procedures Act (APA), we shall review this precedent to provide clarification and a unified approach to appeals involving administrative agencies.

As an initial point of reference, we note our long-standing rule that the APA governs the review of administrative agency matters and is controlling over any provisions that conflict with its terms. *See Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 132, 276 S.E.2d 304, 305 (1981) (holding the APA's standard of review was controlling over conflicting provisions in the workers' compensation act because the APA "purports to provide uni-

form procedures before State Boards and Commissions and for judicial review after the exhaustion of administrative remedies"). With this fundamental principle in mind, we turn now to an examination of the decisions cited by the Court of Appeals.

### A. *Montjoy* and the Final Judgment Rule of Section 1–23–390

*Montjoy v. Asten–Hill Dryer Fabrics,* 316 S.C. 52, 446 S.E.2d 618 (1994) involved an appeal from an order of the circuit court remanding the case to the Commission. We granted the respondent's motion to dismiss the appeal on the basis the circuit court's order was interlocutory and not directly appealable. *Id.* at 52, 446 S.E.2d at 618.

In doing so, we relied upon the final judgment rule articulated in section 1–23–390 of the APA and observed that "we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable."[1] *Id.* Although *Montjoy* involved a Commission case, its holding applies to all administrative agencies subject to the APA.

Section 1–23–390 was thereafter amended,[2] but it still requires an appeal from a "final judgment" of the circuit court and currently provides: "An aggrieved party may obtain a review of a *final judgment* of the circuit court or the court of appeals pursuant to this article by taking an appeal in the manner provided by the South Carolina Appellate Court Rules as in other civil cases." S.C.Code Ann. § 1–23–390 (Supp. 2011) (emphasis added). The phrase, "in the manner provided

---

1. Section 1–23–390 then provided: "An aggrieved party may obtain a review of any *final judgment* of the circuit court under this article by appeal to the Supreme Court. The appeal shall be taken as in other civil cases." *Id.* (quoting S.C.Code Ann. § 1–23–390 (1986)) (emphasis added).

2. The 2006 amendment was necessitated by legislative changes that now direct agency appeals to the Court of Appeals rather than to the circuit court. The change specifically to Commission cases was effective on July 1, 2007. *Pee Dee Reg'l Transp. v. S.C. Second Injury Fund,* 375 S.C. 60, 61–62, 650 S.E.2d 464, 465 (2007) (stating section 42–17–60 previously directed appeals from the Commission to the circuit court, but they now are to the Court of Appeals for injuries occurring on or after July 1, 2007).

by the South Carolina Appellate Court Rules as in other civil cases" simply refers to following the same procedures for briefing schedules, preparation of records, etc., as in other civil cases and these rules do not supersede the APA provisions.

## B. *Charlotte–Mecklenburg:* APA Controls Over the General Appealability Statute of Section 14–3–330

*Charlotte–Mecklenburg Hospital Authority v. South Carolina Department of Health and Environmental Control,* 387 S.C. 265, 692 S.E.2d 894 (2010) concerned the dismissal of an appeal from an order of the Administrative Law Court (ALC) on the basis it was not immediately appealable under the APA. We observed that "[t]he right of appeal arises from and is controlled by statutory law." *Id.* at 266, 692 S.E.2d at 894. We noted that S.C.Code Ann. § 14–3–330(1) (1976)[3] is a general appealability statute that permits immediate appeal from an interlocutory order "involving the merits"; however, where a specialized statute regarding appeals is applicable, section 14–3–330 does not govern the right to review. *Id.*

We observed that S.C.Code Ann. § 1–23–610(A)(1) (Supp. 2009) of the APA allows judicial review only from "final decisions" of the ALC. *Id.* "Therefore, although § 14–3–330 permits appeals from interlocutory orders which involve the merits, that section is inapplicable in cases where a party seeks review of a decision of the ALC because the more specific statute, § 1–23–610, limits review to final decisions of the ALC." *Id.* We overruled two cases "[t]o the extent … [that they] rely on § 14–3–330 to permit the appeal of interlocutory orders of the ALC *or an administrative agency....*" *Id.* (emphasis added).[4]

---

**3.** Section 14–3–330(1) permits review of *"[a]ny intermediate judgment, order or decree in a law case involving the merits* in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions[.]" (Emphasis added.)

**4.** The following cases were overruled: *Canteen v. McLeod Regional Center,* 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009) (a workers' compensation case) and *Oakwood Landfill, Inc. v. South Carolina Department of Health and Environmental Control,* 381 S.C. 120, 671 S.E.2d

We considered the meaning of a "final decision" and stated, "If there is some further act which must be done by the court prior to a determination of the rights of the parties, the order is interlocutory." *Id.* at 267, 692 S.E.2d at 894. "A judgment which determines the applicable law, but leaves open questions of fact, is not a final judgment." *Id.* Rather, "[a] final judgment disposes of the whole subject matter of the action or terminates the particular proceeding or action, leaving nothing to be done but to enforce by execution what has been determined." *Id.* at 267, 692 S.E.2d at 895 (citing *Good v. Hartford Accident & Indem. Co.,* 201 S.C. 32, 21 S.E.2d 209 (1942)).

We concluded that, although the ALC decided questions of law in this matter, it also remanded some issues, so a final determination had yet to be made. *Id.* Consequently, we held the order of the ALC was interlocutory and not a final decision that was immediately appealable. *Id.*

## C. Application of Precedent to Employer's Appeal

Employer attempts to distinguish *Montjoy* and *Charlotte–Mecklenburg* and argues the Court of Appeals applied an "overly broad" interpretation of the latter. Although *Montjoy* holds that a circuit court order remanding a case to an agency for further proceedings is not a final order under section 1–23–390, Employer argues the nature of the remand was not revealed in the *Montjoy* opinion, so *Montjoy* should not preclude an immediate appeal here.

Employer acknowledges that section 1–23–390 of the APA limits appellate review to final orders. However, Employer contends a final order under section 1–23–390 is one that "affects the merits," citing, among other cases, *Owens v. Canal Wood Corp.,* 281 S.C. 491, 316 S.E.2d 385 (1984) and *Hunt v. Whitt,* 279 S.C. 343, 306 S.E.2d 621 (1983). Employer maintains the current order is appealable because the circuit court decided a portion of the case, compensability, with finality, citing *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 387, 622 S.E.2d 546, 551 (Ct.App.2005) ("An order involves the

646 (Ct.App.2009) (an ALC matter). Thus, it is clear from the example of the overruled cases and the reference to "interlocutory orders of the ALC or an administrative agency" that the analysis in *Charlotte–Mecklenburg* applies broadly to administrative agency matters and it is not limited just to orders of the ALC.

merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case." (citation omitted)), *implied overruling recognized by Long v. Sealed Air Corp.,* 391 S.C. 483, 706 S.E.2d 34 (Ct.App. 2011).

In *Long v. Sealed Air Corp.,* the Court of Appeals, noting this Court's recent holding in *Charlotte–Mecklenburg* that section 14–3–330 does not apply where a specific statute of the APA controls, concluded *Brown* had been implicitly overruled to the extent that it defined a final order in terms of whether it "involved the merits" because, even though *Brown* did not cite to or specifically rely upon section 14–3–330, it applied an "involving the merits" analysis, which is relevant only under section 14–3–330. *Long,* 391 S.C. at 487 & n. 4, 706 S.E.2d at 36 & n. 4. Employer argues *Long* was "wrongly decided" under existing precedent and should be overturned.

 Today we reiterate that appeals in administrative agency matters are handled differently than appeals in other cases. The South Carolina General Assembly enacted the APA's mechanisms for review to provide uniform procedures after the exhaustion of administrative remedies; the APA's provisions are controlling in these agency matters and supersede any conflicting provisions. *Lark,* 276 S.C. at 132, 276 S.E.2d at 305. Thus, while appeals from the circuit court in other cases are subject to the general appealability statute of section 14–3–330, which allows appeals from interlocutory orders in certain instances (such as where the interlocutory order involves the merits), this provision and its concepts are inapplicable in matters subject to the APA. *Charlotte–Mecklenburg Hosp. Auth.,* 387 S.C. at 266, 692 S.E.2d at 894.

In this case, the APA contains a specific statute, section 1–23–390, which governs appeals from the circuit court, and this statute limits appeals to those from "final judgments." Final judgments are not defined by the terminology in section 14–3–330 to include interlocutory orders that "involve the merits." The concept of "involving the merits" is part of the analysis in determining whether an interlocutory order may be appealed under section 14–3–330, so it has no bearing here.

As noted by Bone, there are many cases arising after the enactment of the APA that have applied this standard of

"involving the merits," even though they do not specifically reference section 14–3–330. In many instances, these cases reached the correct result, but the "involves the merits" analysis did not survive the enactment of the APA.[5] This has left some lingering confusion in our case law. To clarify, post-APA decisions applying this analysis are overruled to the extent that they either rely upon section 14–3–330 explicitly or rely upon any of its concepts in defining what constitutes a "final judgment."

A "final judgment" is defined in this context as was stated in *Charlotte–Mecklenburg*, i.e., the order must dispose of the whole subject matter of the action or terminate the action, leaving nothing to be done but to enforce what has already been determined. *Charlotte–Mecklenburg Hosp. Auth.*, 387 S.C. at 267, 692 S.E.2d at 895. Although Employer argues one issue (compensability) has been decided here and, thus, the order is immediately appealable, this essentially applies an "involves the merits" analysis that we have already rejected in *Charlotte–Mecklenburg. See id.* at 267, 692 S.E.2d at 894 (stating a judgment deciding issues of law, but leaving open questions of fact is not a final judgment). As Bone asserts, the order does not dispose of the entire action, because a ruling as to compensability, with nothing more (such as the claimant's specific benefits and medical status), is not enforceable as it stands. Further, a circuit court order remanding a matter to an agency is not a final judgment and it is not immediately appealable. *Montjoy*, 316 S.C. at 52, 446 S.E.2d at 618. The ruling in *Montjoy* did not elaborate on the purpose of the remand to the Commission because the holding was not dependent on the nature of the remand.

The procedure urged by Employer, which would postpone a remand to the agency for a final decision and instead allow an appeal from an interlocutory order and then a second appeal after the final agency decision, would result in piecemeal appeals in agency cases that would adversely affect

---

5. Some of these cases are based on reasoning from opinions decided before the enactment of the APA. *See, e.g., Chastain v. Spartan Mills,* 228 S.C. 61, 65, 88 S.E.2d 836, 837 (1955) (holding the Commission's order reversing an award and remanding the case to the single hearing commissioner to take further testimony was not final because it did not "affect the merits").

judicial economy and compromise informed appellate review. The APA's requirement of review of a final decision, and its statutory mandate for the exhaustion of administrative remedies serves (1) to protect the administrative agency's authority and (2) to promote efficiency, and we agree with the Court of Appeals that the order of remand in the current matter is not immediately appealable. *Cf. Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (stating the exhaustion of administrative remedies serves to protect administrative agencies and promote efficiency and "may produce a useful record for subsequent judicial consideration" (citation omitted)); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779 (2004) (noting, in another context, the need for "further[ing] the goals of avoiding piecemeal appeals and fostering informed appellate review"); *Good*, 201 S.C. at 42, 21 S.E.2d at 213 ("The rule in restriction of piecemeal appellate procedure, dating back to the common law, is based upon sound reason and practical utility. If it were otherwise, endless delays would be encountered—delays which are unnecessary in cases ... which can be decided upon an appeal from [ ] final judgment. . . .").

To the extent Employer argues this result is untenable because the law of the case doctrine would preclude later review of the matter of compensability, this assertion is without merit. The law of the case doctrine applies where a party does not challenge an issue on appeal when there has been an opportunity to do so. Where the party is not yet able to appeal due to the lack of a final judgment, the issue is not precluded by the law of the case doctrine as there was no prior opportunity for appeal.[6]

## III. CONCLUSION

In agency appeals, the APA is controlling over general provisions that conflict with its terms. In this case, there is a specific statute in the APA that governs appeals from the

---

**6.** *See generally Sloan Constr. Co. v. Southco Grassing, Inc.*, 395 S.C. 164, 169, 717 S.E.2d 603, 606 (2011) ("Under the law of the case doctrine, 'a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been or raised on appeal, but expressly rejected by the appellate court.'" (citation omitted)).

circuit court in Commission cases, section 1–23–390, and it limits appeals to those from final judgments. Therefore, section 14–3–330, a general appealability statute allowing interlocutory appeals in certain instances, and its concepts are not applicable here. The definition of a "final judgment" used in *Charlotte–Mecklenburg* should be the point of reference in any analysis of that term when applying section 1–23–390. Consequently, we affirm the decision of the Court of Appeals, which found the current order remanding the matter to the Commission for further proceedings, does not constitute a final judgment as required by section 1–23–390 and is not immediately appealable.

**AFFIRMED.**

TOAL, C.J. and PLEICONES, J., concur.

HEARN, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

Justice HEARN.

Respectfully, I dissent. In my opinion, this case involves nothing more than a straight-forward application of Section 1–23–390 of the South Carolina Code (Supp.2011), which permits an appeal from a final decision involving the merits of a substantial issue in a case. Under this rubric, the court of appeals erred in dismissing U.S. Food Service's appeal. In reaching the opposite result and broadening *Charlotte–Mecklenburg Hospital Authority v. South Carolina Department of Health & Environmental Control*, 387 S.C. 265, 692 S.E.2d 894 (2010), beyond its original context, the majority overrules years of settled case law. Because *Charlotte–Mecklenburg* is inapposite and does not alter the analysis under section 1–23–390, I would reverse.

To begin, I agree with the majority that the Administrative Procedures Act (APA) governs the standards of appealability in administrative cases, which means our general rules do not apply. As explained more thoroughly below, the APA provides appealability standards for two different stages of these proceedings: appeal from the administrative body to the

judiciary,[7] and further appellate review within the courts. This case involves only the latter, which is controlled by section 1–23–390. This statute provides: "An aggrieved party may obtain a review of a final judgment of the circuit court or court of appeals pursuant to this article by taking an appeal in the manner provided by the South Carolina Appellate Court Rules as in other civil cases." At the heart of this case is what the words "final judgment" in section 1–23–390 mean.

The first time we expressly interpreted this statute was in *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 446 S.E.2d 618 (1994). At the time that case was decided, section 1–23–390 read: "An aggrieved party may obtain a review of any final judgment of the circuit court under this article by appeal to the Supreme Court. The appeal shall be taken as in other civil cases." S.C.Code Ann. § 1–23–390 (1986). Under this standard, which is similar to the present version of section 1–23–290, "we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable." *Montjoy*, 316 S.C. at 52, 446 S.E.2d at 618 (1994). However, there is more to this than meets the eye. Because we provided no information regarding the scope of the remand in question, it is necessary to turn to the two workers' compensation cases relied upon to flesh out what we actually held: *Hunt v. Whitt*, 279 S.C. 343, 306 S.E.2d 621 (1983), and *Owens v. Canal Wood Corp.*, 281 S.C. 491, 316 S.E.2d 385 (1984).[8]

In *Hunt*, the circuit court remanded a decision of the full commission so it could take additional testimony from the employee. 279 S.C. at 343, 306 S.E.2d at 622. We held: "Because the interlocutory order of the circuit court *does not involve the merits of the action*, it is not reviewable by this Court for lack of finality." *Id.* (emphasis added). Similarly, in *Owens*, the circuit court remanded for the taking of addi-

---

7. Appeals from agency decisions used to be to the circuit court. S.C.Code Ann. § 1–23–380(1) (2005). Thus, the circuit court would sit in an appellate capacity. The statute has since been amended, and now appeals are brought directly to the court of appeals. S.C.Code Ann. § 1–23–380(1) (Supp.2011).

8. Section 1–23–390 was passed into law in 1977. *See* 1977 Act No. 176, Art. II, § 9. Accordingly, even though they do not cite this statute, *Hunt* and *Owens* were governed by it.

tional testimony, so the order did *"not involve the merits of the action.* It [was] therefore interlocutory and not reviewable by this Court for lack of finality." 281 S.C. at 491–92, 316 S.E.2d at 385 (emphasis added). Thus, in interpreting the scope of the final judgment rule under section 1–23–390, *Montjoy* implicitly reaffirmed the principle that a final order involving the merits of an action is immediately appealable.

In the years since *Montjoy,* the court of appeals has had many opportunities to evaluate appealability under section 1–23–390. In particular, the court of appeals examined this issue at length in *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 622 S.E.2d 546 (Ct.App.2005). There, Brown, a worker in a cotton mill, developed breathing problems after years of service. *Id.* at 383, 622 S.E.2d at 549. Although he also smoked cigarettes for forty-five years, he claimed the respiratory troubles he developed were from his work in the mill. *Id.* at 382, 622 S.E.2d at 548. Despite the evidence to the contrary, the single commissioner concluded Brown's "respiratory disease arose out of and in the course of his employment; said disease was due to hazards of the employment which are excess of hazards normally incident to normal employees." *Id.* at 384, 622 S.E.2d at 550. The full commission affirmed. *Id.* at 385, 622 S.E.2d at 550. The circuit court, however, held Brown's smoking was a contributing cause of his illness, and therefore the mill was entitled to a reduction in the compensation it owed. *Id.* at 386, 622 S.E.2d at 550. Accordingly, the circuit court remanded for a determination of the extent of this reduction. *Id.*

Brown appealed, and the mill argued the order remanding to the commission was not immediately appealable. *Id.* at 386, 622 S.E.2d at 550–51. The court of appeals, citing section 1–23–390, *Montjoy, Owens,* and *Hunt,* held that "in determining whether the court's order constitutes a final judgment, we must inquire whether the order finally decides an issue on the merits." *Id.* at 387, 622 S.E.2d at 551. As the court went on to note, " 'An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case.' " *Id.* (quoting *Green v. City of Columbia,* 311 S.C. 78, 80, 427 S.E.2d 685, 687 (Ct.App. 1993)). Because the circuit court finally determined that Brown's smoking contributed to his injuries, it was a final

judgment under section 1–23–390 and therefore was appealable. *Id.* at 388, 622 S.E.2d at 551. The fact the circuit court had also remanded the proceedings was of no moment because "the panel would have no choice but to allocate some part of Brown's disability to the non-compensable cause." *Id.*

The court of appeals reached the same result in *Mungo v. Rental Uniform Service of Florence, Inc.,* 383 S.C. 270, 678 S.E.2d 825 (Ct.App.2009). In that case, the claimant, Mungo, alleged a change in condition that would entitle her to more benefits than she originally was awarded for her injuries. *See id.* at 276, 678 S.E.2d at 828. The single commissioner denied her request because the report which she used to show a change in condition was completed prior to the original hearing. *Id.* The full commission affirmed, and Mungo appealed to the circuit court. *Id.* The court reversed, holding the report could be considered and Mungo had demonstrated a change in condition. *Id.* at 276–77, 678 S.E.2d at 828. Accordingly, the court remanded for the commission "to determine the precise benefits owed to [Mungo] for her change in condition and for her psychological condition." *Id.* at 277, 678 S.E.2d at 828–29.

The employer sought review before the court of appeals, and the threshold question was whether the circuit court's order was appealable. *Id.* at 277, 678 S.E.2d at 829. Relying in part on *Brown,* the court found that it was:

> The circuit court's order mandates an award for change of condition. . . . This ruling is a decision on the merits because it decides with finality whether [Mungo] proved these changes in her condition. Although the circuit court remanded the issue of the precise damages to be awarded to [Mungo], the single commissioner would have no choice but to award some damages to [her]. Accordingly, the circuit court's order constitutes a final decision and is appealable.

*Id.* at 278, 678 S.E.2d at 829.

The court of appeals also has used this same framework to determine when an order of the circuit court is *not* appealable. For example, in *Foggie v. General Electric Corp.,* 376 S.C. 384, 656 S.E.2d 395 (Ct.App.2008), the circuit court held the full commission's finding of permanent total disability rested, at least in part, on evidence which should have been excluded. *Id.* at 387, 656 S.E.2d at 397. The court also found the

commission did not make any findings regarding a potential credit to the employer for previous psychological injuries the employee sustained. *Id.* at 387–88, 656 S.E.2d at 397. Consequently, the court remanded with instructions for the commission to review the record without the excluded evidence and determine whether the employee was still permanently and totally disabled, and to make findings regarding the employer's entitlement to the credit. *Id.*

The employee appealed, and the court of appeals held the circuit court had not made a final determination of whether the employee was totally and permanently disabled or whether the employer could receive any credit. *Id.* at 389, 656 S.E.2d at 398. Accordingly, the circuit court's order was not immediately appealable. *Id.; see also McCrea v. City of Georgetown,* 384 S.C. 328, 333, 681 S.E.2d 918, 921 (Ct.App.2009) ("The circuit court's order was not a final judgment and did not involve the merits of the case. The circuit court remanded the case to the Commission so that additional evidence could be entered into the record without determining whether Claimant was disabled or whether Employer was entitled to stop payments. As such, this appeal is interlocutory.").

Thus, the test heretofore consistently applied in this State to determine whether an appellate decision is eligible for further review under section 1–23–390 is whether the order finally determines an issue affecting a substantial right on the merits. It does not appear the majority believes these cases were wrongly decided based on the law as it existed at the time. Instead, the majority holds that *Charlotte–Mecklenburg* rejected the concept of an "involving the merits" analysis under the APA and therefore implicitly overruled this line of cases. In my opinion, however, *Charlotte–Mecklenburg* did no such thing and has no impact on this case.

In *Charlotte–Mecklenburg,* the Administrative Law Court (ALC) partially granted summary judgment and remanded for the Department of Health and Environmental Control to decide whether any party was entitled to a certificate of need.[9] 387 S.C. at 266, 692 S.E.2d at 894. One of the parties

---

9. In order to obtain permission to construct certain healthcare facilities, the facility may need to demonstrate the need for it. *See* S.C.Code Ann. § 44–7–110 *et seq.* (2002 & Supp.2011).

582

appealed the ALC's order, and we dismissed the appeal as interlocutory. *Id.* The controlling statute in *Charlotte–Mecklenburg* was not section 1–23–390. Instead, it was Section 1–23–610 of the South Carolina Code (Supp.2011), which provides "for judicial review of a final decision of *an administrative law judge.*" [10] (emphasis added). We defined a final decision in this context as follows:

If there is some further act which must be done by the court prior to a determination of the rights of the parties, the order is interlocutory. A judgment which determines the applicable law, but leaves open questions of fact, is not a final judgment. A final judgment disposes of the whole subject matter of the action or terminates the particular proceeding or action, leaving nothing to be done but to enforce by execution what has been determined.

*Charlotte–Mecklenburg,* 387 S.C. at 267, 692 S.E.2d at 894–95 (internal citations omitted). Because the ALC's order did not finally determine whether any party was entitled to a certificate of need, the order under review was not a final decision and thus not immediately appealable. [11] *Id.* at 267, 692 S.E.2d at 895.

The majority therefore is correct that *Charlotte–Mecklenburg* rejected an "involving the merits" analysis *with respect to administrative and agency decisions.* *See id.* at 266, 692

---

10. The statute governing appeals from the Workers' Compensation Commission is Section 1–23–380 of the South Carolina Code (Supp. 2011), a sister statute of section 1–23–610, which similarly provides that "[a] party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." I agree with the majority that *Charlotte–Mecklenburg's* interpretation of section 1–23–610 applies equally to section 1–23–380.

11. In reaching this result, we overruled two cases "to the extent [they] rely on [Section 14–3–330 of the South Carolina Code (1976)] to permit the appeal of interlocutory orders of the ALC or an administrative agency." *Charlotte–Mecklenburg,* 387 S.C. at 266, 692 S.E.2d at 894. The cases were *Canteen v. McLeod Regional Medical Center,* 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009) and *Oakwood Landfill, Inc. v. South Carolina Department of Health & Environmental Control,* 381 S.C. 120, 671 S.E.2d 646 (Ct.App.2009). Both of these cases concerned the initial appeal of an administrative order, not further appellate review of an order of the circuit court. *See Canteen,* 384 S.C. at 624, 682 S.E.2d at 507; *Oakwood,* 381 S.C. at 132, 671 S.E.2d at 653.

S.E.2d at 894 ("[A]lthough § 14–3–330 permits appeals from interlocutory orders which involve the merits, that section is inapplicable in cases where a party seeks review of a decision of the ALC because the more specific statute, § 1–23–610, limits review to final decisions of the ALC"). *Charlotte–Mecklenburg* therefore examined a different statute and a different stage in the appellate process for administrative cases. Rather than determining whether an order of the circuit court sitting in an appellate capacity or the court of appeals is ripe for further review under the applicable statute—section 1–23–390—*Charlotte–Mecklenburg* only concerned whether the *administrative* order itself is final and therefore appealable to the judicial branch in the first instance. Put in the context of this case, *Charlotte–Mecklenburg* governs the appealability of the full commission's decision, not the circuit court's order reviewing it in an appellate capacity. Because the full commission found Bone's claim was not compensable, it rendered a final judgment and the circuit court could entertain the appeal under *Charlotte–Mecklenburg*. At this point, appealability ceased to be governed by *Charlotte–Mecklenburg* and is now controlled by section 1–23–390, and nothing in our opinion suggests we intended to abrogate the existing framework under it.

Once this distinction is acknowledged, the majority's concerns that an "involving the merits" analysis "would result in piecemeal appeals in agency cases that would adversely affect judicial economy and compromise informed judicial review" disappear. In fact, the interests of judicial economy actually demand a rejection of the majority's view. If accepted, the majority's position could leave cases trapped in a cycle of remands for years so long as some other non-ministerial determination needs to be made. This case is a prime example. The full commission made a final decision that Bone's claim was not compensable, a decision from which Bone was entitled to appeal.[12] The circuit court—acting as an appellate court—disagreed. Rather than permit an appeal to the court of appeals to review that decision, which potentially could find

12. Accordingly, the majority incorrectly states an "involving the merits analysis" would postpone a final decision from the agency. In fact, the requirement that the agency finally decide the case before a party can seek judicial review was firmly established by *Charlotte–Mecklenburg.*

her injuries are not compensable and end the matter, the majority would require the case go back to the commission. At this point, there will be new hearings conducted at great expense to both parties. Moreover, because compensability has been established without the opportunity for further appellate review by the court of appeals, U.S. Food Service will be required to pay benefits to Bone as the case works its way back up the appellate chain.

Once the full commission renders a decision on what benefits are owed to Bone, the parties will return again to the court of appeals.[13] In doing so, U.S. Food Service runs the risk that the court of appeals will again remand the case, at which point it will have to start the process all over again. Only after that court issues its "final" order—assuming it finds nothing else warranting a remand—can U.S. Food Service finally argue to this Court that the full commission correctly held Bone's claim was not compensable back in June 2008. I fail to see how the possibility of such a result is tenable under the guise of judicial economy. Tellingly, the majority is unable to account for how appeals in non-agency cases which do not impose the heightened finality requirement have the same grim results it fears my view would lead to.

Additionally, the definition of final judgment under section 1–23–390 has no impact on "informed appellate review." Here again, the majority misapprehends the stage of proceedings in which we find ourselves. It cannot be forgotten that in these cases the circuit court sits in an appellate capacity, and *Charlotte–Mecklenburg* demands that the appealed order be a final one. Thus, by the time an administrative case arrives in the circuit court or the court of appeals, all the fact finding to support that final decision has taken place and there is not an opportunity to introduce more evidence. The record therefore is closed, and our platform for review is set. Requiring that the circuit court issue a final decision as defined in *Charlotte–Mecklenburg* as a prerequisite to filing an appeal in the court of appeals (or the court of appeals do so before a party can petition for a writ of certiorari from this Court) does nothing to inform appellate review.

---

13. Due to the changes to section 1–23–380, the case would now proceed directly to the court of appeals.

The majority also believes the "involving the merits" rule is contrary to the requirement that one must exhaust his administrative remedies, but this too ignores the procedural posture of these cases. Exhausting one's administrative remedies is a threshold requirement to obtaining review in the courts. Thus, prior to appealing to the circuit court or the court of appeals, the appellant must have already exhausted his administrative remedies and obtained a final decision from the agency. This is the effect of sections 1–23–380 and 1–23–610 and *Charlotte–Mecklenburg.* Section 1–23–390, on the other hand, governs only when an aggrieved party can proceed to the next level of appellate review within the judiciary; it simply has no bearing on the finality of the agency's decision or exhaustion of remedies.

For these reasons, I believe the recent court of appeals' decision in *Long v. Sealed Air Corp.*, 391 S.C. 483, 706 S.E.2d 34 (Ct.App.2011)—on which the majority relies to hold cases such as *Brown* are no longer good law due to *Charlotte–Mecklenburg*—is incorrect. The facts of *Long* are strikingly similar to the ones presented here. *Long* was another workers' compensation case, and the single commissioner found Long, the employee, failed to report his injury within the required time frame. *Id.* at 484, 706 S.E.2d at 34. The full commission affirmed. *Id.* Thus, the full commission made a final decision that Long's claim was barred. The circuit court, however, held Long had complied with the notice requirement and remanded for further proceedings. *Id.* at 484, 706 S.E.2d at 35.

The court of appeals first held that under section 1–23–390 and *Montjoy* the circuit court's order was not appealable because "the commission must conduct additional proceedings before a final judgment is reached." *Id.* at 485, 706 S.E.2d at 35. Next, the court addressed the impact of *Charlotte–Mecklenburg* on the analysis and found that it was "at least an implicit rejection of *Brown.*" [14] *Id.* at 487, 706 S.E.2d at 36.

---

14. The court's logic was that because *Charlotte–Mecklenburg* expressly overruled *Canteen,* and *Canteen* relied on *Brown, Charlotte–Mecklenburg* implicitly overruled *Brown* as well. *Long,* 391 S.C. at 487, 706 S.E.2d at 36. As explained above in footnote 11, however, *Canteen* dealt with the appealability of the full commission's order, not the circuit court's. Thus, the fact it was overruled by *Charlotte–Mecklenburg* has no bearing

As the court explained, "In light of *Charlotte–Mecklenburg*, we can find no basis on which to distinguish any decisions, including *Brown*, which rely on section 14–3–330 [15] in finding a decision of the commission appealable. Accordingly, we believe the supreme court has effectively overruled *Brown*, and we will no longer apply it." Thus, because the circuit court ordered a remand, there was no final decision and the order was not immediately appealable. *Id.*

Judge Geathers authored a dissenting opinion in *Long*, in which he thoroughly and cogently examined the precedents from both this Court and the court of appeals and concluded,

[T]he circuit court's decision that [Long] gave timely notice of her accidental injury to [Sealed Air] is the type of judgment that is an ultimate decision on the merits because it finally determines some substantial matter forming a defense available to Sealed Air. This is a final decision on the merits, and the remand language in the order has no effect on the finality of that decision.

*Id.* at 492–93, 706 S.E.2d at 39 (Geathers, J., dissenting). As Judge Geathers also notes in his dissent, we denied certiorari in both *Brown* and *Mungo*. *Long*, 391 S.C. at 491, 706 S.E.2d at 38. He even was quick to point out that we denied certiorari in *Mungo*—which relied on *Brown*—on the same day we decided *Charlotte–Mecklenburg*. *Id.*

In my opinion, the majority in *Long* committed the same error the majority commits today by over-reading *Charlotte–Mecklenburg*. As explained above, *Charlotte–Mecklenburg* interprets another statute invoked at a different stage in the

---

on whether *Brown* was wrongly decided. The *Canteen* court even acknowledged *Brown* was not on point because of this distinction. 384 S.C. at 621 n. 3, 682 S.E.2d at 506 n. 3.

**15.** *Brown* did not actually rely on section 14–3–330, a point which the court of appeals conceded in a footnote. *Long*, 391 S.C. at 487 n. 4, 706 S.E.2d at 36 n. 4. However, the court clarified that, in its view, "the *Brown* court's holding that the appealed order is a 'final judgment' under section 1–23–390 is based on a finding that the order 'involves the merits,' a concept that is relevant only under section 14–3–330." *Id.* This is not correct. *Brown's* holding rested on *Montjoy, Hunt,* and *Owens,* all workers' compensation cases arising after the enactment of the APA and therefore controlled by section 1–23–390. Thus, "involving the merits" does not belong exclusively to section 14–3–330.

proceedings, and it evinces no intent to overrule any of the cases implicating section 1–23–390. I therefore believe *Brown* remains good law. Moreover, I believe the other cases from the court of appeals discussed above all correctly hold that appeals from final judgments involving the merits are countenanced under section 1–23–390. This rule does not result from a misguided application of section 14–4–330 to administrative appeals, but instead from a faithful adherence to our prior precedents in *Montjoy, Hunt,* and *Owens*. The court of appeals in *Long* consequently also erred in holding *Montjoy* itself would not permit the employer's appeal.

In sum, by finding *Charlotte–Mecklenburg* applies here, the majority has conflated the requirements to initially appeal an administrative order with the requirements for further appellate review beyond the circuit court or the court of appeals. Turning to the proper application of section 1–23–390 to this case, the circuit court's order undoubtedly was a final decision involving the merits of a substantial issue in the case—the compensability of the claim. Although the single commissioner and the full commission found Bone's claim to not be compensable, the circuit court disagreed. It therefore remanded for a determination of the benefits owed to Bone. Thus, the question of compensability—one of U.S. Food Service's main defenses—was decided with finality as there was nothing more the commission could do regarding that issue. Accordingly, the order is appealable under section 1–23–390. *See Mungo,* 383 S.C. at 278, 678 S.E.2d at 829 ("Although the circuit court remanded the issue of the precise damages to be awarded to Claimant, the single commissioner would have no choice but to award some damages to Claimant. Accordingly, the circuit court's order constitutes a final decision and is appealable."); *Brown,* 366 S.C. at 387–88, 622 S.E.2d at 551 (holding circuit court's order that apportionment was required was final and appealable even though the court remanded for a determination of the amount of apportionment due). I would therefore reverse the order of the court of appeals and remand for it to consider the merits of U.S. Food Service's argument.

KITTREDGE, J., concurs.