732 S.E.2d 230

**REGIONS BANK, Appellant,**

v.

**Richard C. STRAWN, Robert K. Borchers, individually and as personal representative of the Estate of Marie Borchers, and Nancy Davidson Borchers, Respondents.**

No. 5027.

Court of Appeals of South Carolina.

Heard Jan. 11, 2012.

Decided Aug. 22, 2012.

Rehearing Denied Sept. 25, 2012.

Harold P. Threlkeld, of Anderson, for Appellant.

Samantha Nelson Murphy, of Anderson, for Respondents.

KONDUROS, J.

Regions Bank (the Bank) appeals the trial court's award of damages to subsequent purchasers of real property (the Property) under section 29-3-320 of the South Carolina Code (2007) for the Bank's failure to mark satisfied a mortgage on the Property. We affirm.

## FACTS/PROCEDURAL HISTORY

Richard Strawn owned the Property, which was located in Anderson, South Carolina. He gave the Bank a home equity mortgage (the Mortgage) on the Property to secure a credit line of $50,000. The mortgage provided that it would be "governed by and interpreted in accordance with federal law and the laws of the State of South Carolina." On December 12, 2001, he deeded the Property to his wife at the time, Cammie Strawn. On October 31, 2003, Marie Borchers purchased the Property from Cammie through a cash sale. On the day of the closing of the sale, James Belk, the closing attorney for the sale, had one of his employees, Cathy Slaton Curtis, hand deliver a trust account check to the Bank for the payoff amount on the Mortgage. The check had the words "Payoff of first Mortgage" typed on the check. The Bank processed the check but did not mark the Mortgage as satisfied. Several weeks later, the Bank issued Strawn a new set of checks for the line of credit. He used the checks, resulting in a debt of $72,787.95 including interest and penalties.

On December 22, 2005, Belk executed a mortgage lien satisfaction affidavit after the Bank's attorney informed him the Mortgage had not been satisfied. On March 1, 2006, the

Bank instituted an action against Strawn for the collection of the debt and a foreclosure action against Robert K. Borchers, individually and as personal representative of the estate of Marie Borchers, and Nancy Davidson Borchers (collectively the Borchers).[1] The Borchers filed an answer and counterclaim against the Bank, a crossclaim against Strawn, and a third-party complaint against Belk. As to the counterclaim against the Bank, the Borchers sought the statutory penalties set forth in section 29–3–320 of the South Carolina Code for failure to satisfy the mortgage within ninety days.

On August 20, 2008, the circuit court granted summary judgment to the Borchers as to the Bank's foreclosure action, finding the Bank was estopped from foreclosing on the Property because the Bank should have processed the check as a payoff instead of a paydown on Strawn's line of credit and should have had the Mortgage satisfied as of record.

In March 2010, a nonjury trial was held on the Borchers' counterclaim against the Bank. At trial, Belk testified that as part of the closing, a transmittal letter was prepared, stating the trust account check was enclosed as final payment of the loan. The letter further stated, "PLEASE FORWARD SATISFIED DOCUMENTS (with a copy of this letter) TO THIS OFFICE TO BE REMOVED OF RECORD." Curtis testified that she was involved in the payoff for this closing. She testified that when she was handling a payoff, she would take the check, the payoff letter, and the payoff statement that comes from the bank and staple all three of them together, so they would not get separated in case there were multiple payoffs at the same bank at one time. She then would go to the bank and give them the packet, and she would get the bottom part of the check once it had been run through the bank's machine to show the date and time the payoff was made and a receipt. Curtis had sworn an affidavit on April 14, 2008, she had taken the letter to Bank.

Pamela H. Harbin, a former employee of the Bank, testified she researched the Bank's records to determine what it received with the payoff check. She testified she had seen no evidence the Bank had received the letter. She also provided

---

1. Marie had died since purchasing the Property, and Robert and Nancy were her devisees and succeeded her interest in the Property.

that if the Bank had received the letter, it would have followed the instructions in the letter and would have probably contacted Strawn to ask if he wanted the equity line cancelled.

The trial court found the testimony conflicted as to whether or not the Bank received notice of the request to satisfy the Mortgage. It found the Bank's review of its records, which occurred more than two years after the closing date, was remote, making it just as likely the document was lost as it was never received. It noted Belk and Curtis's testimonies were clear that for a local bank, like the Bank, their standard practice was to personally deliver a payoff letter with the payoff check, which specifically requested the Mortgage be satisfied within three months, and Curtis believed she did so in this instance. The court found that testimony to be credible. The court determined the Bank violated section 29-3-310 of the South Carolina Code, making it subject to the penalty under section 29-3-320 of the South Carolina Code and awarded the Borchers $25,000 and attorney's fees and costs from the Bank. This appeal followed.

## STANDARD OF REVIEW

On appeal of an action at law tried without a jury, we will not disturb the trial court's findings of fact unless no evidence reasonably supports the findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Additionally, the appellate court can correct errors of law. *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.*, 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct.App.2003). The trial court's findings in a law action are equivalent to a jury's findings. *Chapman v. Allstate Ins. Co.*, 263 S.C. 565, 567, 211 S.E.2d 876, 877 (1975). Questions regarding credibility and the weight of the evidence are exclusively for the trial court. *Sheek v. Crimestoppers Alarm Sys.*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989). "We may not consider the case based on our view of the preponderance of the evidence, but must construe the evidence presented to the [trial court] so as to support [its] decision wherever reasonably possible." *Id.* "We must look at the evidence in the light most favorable to the respondents and eliminate from consideration all evidence to the contrary." *Id.*

## LAW/ANALYSIS

### I. Timely Satisfaction of the Mortgage

■ The Bank argues because the Mortgage was timely cancelled as required by section 29-3-310 of the South Carolina Code (2007), the trial court erred in ruling the Bank failed to timely satisfy the Mortgage. We disagree.

Section 29-3-310 provides:

Any holder of record of a mortgage who has received full payment or satisfaction or to whom a legal tender has been made of his debts, damages, costs, and charges secured by mortgage of real estate shall, at the request by certified mail or other form of delivery with a proof of delivery of the mortgagor or of his legal representative or any other person being a creditor of the debtor or a purchaser under him or having an interest in any estate bound by the mortgage and on tender of the fees of office for entering satisfaction, within three months after the certified mail, or other form of delivery, with a proof of delivery, request is made, enter satisfaction in the proper office on the mortgage which shall forever thereafter discharge and satisfy the mortgage.

Section 29-3-320 of the South Carolina Code (2007) addresses the liability for failure to enter satisfaction. It states:

Any holder of record of a mortgage having received such payment, satisfaction, or tender as aforesaid who shall not, by himself or his attorney, within three months after such certified mail, or other form of delivery, with a proof of delivery, request and tender of fees of office, repair to the proper office and enter satisfaction as aforesaid shall forfeit and pay to the person aggrieved a sum of money not exceeding one-half of the amount of the debt secured by the mortgage, or twenty-five thousand dollars, whichever is less, plus actual damages, costs, and attorney's fees in the discretion of the court, to be recovered by action in any court of competent jurisdiction within the State. And on judgment being rendered for the plaintiff in any such action, the presiding judge shall order satisfaction to be entered on the judgment or mortgage aforesaid by the clerk, register, or other proper officer whose duty it shall be, on receiving such order, to record it and to enter satisfaction accordingly.

Notwithstanding any limitations under Sections 37–2–202 and 37–3–202, the holder of record of the mortgage may charge a reasonable fee at the time of the satisfaction not to exceed twenty-five dollars to cover the cost of processing and recording the satisfaction or cancellation. If the mortgagor or his legal representative instructs the holder of record of the mortgage that the mortgagor will be responsible for filing the satisfaction, the holder of the mortgage shall mail or deliver the satisfied mortgage to the mortgagor or his legal representative with no satisfaction fee charged.

*Id.*

To trigger the penalty and related relief provided in section 29–3–320, section 29–3–310 requires the mortgagor or purchaser under him to establish (1) he has made full payment of his debts, including any applicable damages, costs, and charges; (2) he has made a request by certified mail or other form of delivery with a proof of delivery the mortgage be satisfied of record; (3) he has made a tender of fees of office for entering satisfaction; and (4) the mortgagee has failed to enter satisfaction in the proper office on the mortgage within three months of the request. *Dykeman v. Wells Fargo Home Mortg., Inc.,* 381 S.C. 333, 340, 673 S.E.2d 804, 807 (2009).

■■■■■ "For liability to attach under the applicable statutes, payment of the mortgage is 'only the first step in the mortgage satisfaction process. In order for Bostic to recover the statutory penalty under section 29–3–320, he had to satisfy the condition precedent of making a request for [the mortgagee] to record his mortgage as satisfied.'" *Id.* at 339, 673 S.E.2d at 807 (alterations by court) (quoting *Bostic v. Am. Home Mortg. Servicing, Inc.,* 375 S.C. 143, 154, 650 S.E.2d 479, 485 (Ct.App. 2007)). "A request, to trigger the statutory penalty, may not be implied or inferred. The request must affirmatively convey to the mortgagee that a recording of the satisfaction is sought." *Id.* (citation omitted). However, section 29–3–310 does not mandate a written request. *Bostic,* 375 S.C. at 155, 650 S.E.2d at 485. The statute is satisfied if the aggrieved party (1) makes a verbal or written request expressing his desire for the mortgagee to satisfy the mortgage and (2) demonstrates that the mortgagee has received or agreed to this request. *Id.*

In *Dykeman,* the Dykemans relied exclusively on their compliance with the "borrower's responsibilities" document Wells Fargo furnished as their request for satisfaction, which the court found to be insufficient. 381 S.C. at 339 n. 3, 673 S.E.2d at 807 n. 3. In *Bostic,* the court found "Bostic's payoff check sent by certified mail was insufficient to constitute a 'request' within the meaning of the statute." 375 S.C. at 155, 650 S.E.2d at 485. The court determined:

> Clearly, the cashier's check without additional correspondence, either verbal or written, did not affirmatively convey to American Home that Bostic expressly desired to have his mortgage recorded as satisfied. By sending the payoff check, Bostic effectively satisfied his mortgage. However, this check was only the first step in the mortgage satisfaction process. In order for Bostic to recover the statutory penalty under section 29-3-320, he had to satisfy the condition precedent of making a "request" for American Home to record his mortgage as satisfied.

*Id.*

Bostic asserted telephone conversations he alleged to have had with American Home after he mailed the payoff check could be construed as a "request." *Id.* at 155, 650 S.E.2d at 485. However, the court found the record contained no evidence an American Home representative spoke with Bostic. *Id.* at 155, 650 S.E.2d at 485–86. The court further determined "[b]ecause this case was presented to the circuit court at the summary judgment stage and there is no definitive evidence that a verbal agreement was reached during these telephone conversations, we cannot find that American Home was given a sufficient 'request' which obligated it to mark the mortgage satisfied within the statutory time period." *Id.* at 155–56, 650 S.E.2d at 486.

The Bank seems to argue that it did not have to cancel the Mortgage until the first circuit court issued its order and by that point, the Mortgage had already been cancelled. However, the trial court actually found the Bank failed to timely cancel the Mortgage based on when the closing attorney sent the satisfaction check. In *Bostic,* the court found Bostic's sending the payoff check and alleged phone calls to the bank did not constitute a request as required by the statute. In the

present case, some evidence supports the trial court's finding the closing attorney had requested the Mortgage be marked as satisfied when he sent the check; both Curtis and Belk testified they generated a satisfaction letter as part of standard procedure for a closing, and Belk stated he reviewed the closing packet and the letter was included in it. The trial court found their testimonies credible and found it likely the Bank had misplaced the letter in its records based on the length of time before it checked its records. Because we leave matters of credibility to the trial court, we conclude the record contains evidence supporting the trial court's finding that the Borchers complied with the statute by Curtis's delivering the satisfaction letter with the check.

## II. Open–Ended Mortgage

▉ The Bank contends because it had agreed to satisfy the Mortgage only by the request of the grantor and no such request was made, the trial court erred by ruling the Bank failed to satisfy the Mortgage as required by section 29–3–310. We disagree.

▉ "Determining the proper interpretation of a statute is a question of law, and this [c]ourt reviews questions of law de novo." *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). When a statute's language is plain and unambiguous and conveys a clear and definite meaning, the court has no right to impose another meaning. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Id.* The best evidence of legislative intent is the text of the statute. *Wade v. State,* 348 S.C. 255, 259, 559 S.E.2d 843, 844 (2002). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n,* 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills, Inc. v. S.C. Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998). An appellate court will

reject the interpretation of a statute that would lead to an absurd result the legislature could not have intended. *Lancaster Cnty. Bar Ass'n v. S.C. Comm'n on Indigent Def.,* 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008). When "the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself." *Kennedy v. S.C. Ret. Sys.,* 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001). In some cases, legislative history may be probative in determining the legislature's intent. *Eagle Container Co. v. Cnty. of Newberry,* 366 S.C. 611, 630, 622 S.E.2d 733, 743 (Ct.App.2005), *rev'd on other grounds,* 379 S.C. 564, 666 S.E.2d 892 (2008).

> Any mortgage or other instrument conveying an interest in or creating a lien on any real estate, securing existing indebtedness or future advances to be made, regardless of whether the advances are to be made at the option of the lender, are valid from the day and hour when recorded so as to affect the rights of subsequent creditors, whether lien creditors or simple contract creditors, or purchasers for valuable consideration without notice to the same extent as if the advances were made as of the date of the execution of the mortgage or other instrument for the total amount of advances made thereunder, together with all other indebtedness and sums secured thereby, the total amount of existing indebtedness and future advances outstanding at any one time may not exceed the maximum principal amount stated therein, plus interest thereon, attorney's fees and court costs.

S.C.Code Ann. § 29-3-50(A) (2007).

> The statute clearly sanctions the right of parties to give and to accept open-end mortgages to secure future advances. There is nothing express or implied, in the statute to infer that it was the intent of the legislature that the mortgage be dead once there is no debt momentarily existing. The statute permits the parties to agree that the mortgage live on until the mortgagor requests its cancellation. [Former section 29-3-310] provides for such cancellation. In addition, the parties in the mortgage (as quoted hereinabove) have expressly agreed that the mortgage live on until canceled of record. A holding that an open-end mortgage dies when there is currently no debt for it to secure, would

severely limit its beneficial use and defeat the legislative intent. As long as the mortgage is of record, any subsequent lien holder or purchaser takes with notice of the impact of the Code section.

*Central Prod. Credit Ass'n v. Page,* 268 S.C. 1, 8, 231 S.E.2d 210, 214 (1977).

A plain reading of section 29–3–310 does not specify any special procedures that lessen a bank's obligation when a mortgage is open ended. Because the requirements under the statute are met, the trial court did not err in finding the Bank violated section 29–3–310.

### III. Clear and Convincing Evidence

 The Bank maintains the trial court erred by ruling it failed to satisfy the Mortgage because the Borchers did not present clear and convincing evidence any request to satisfy the Mortgage was made. We disagree.

As we have noted above, the trial court found the Bank failed to timely cancel the Mortgage based on when the closing attorney sent the satisfaction check. Some evidence supports the trial court's finding the closing attorney had requested the Mortgage be marked as satisfied when he sent the check; Belk testified he reviewed the documents and Curtis testified she delivered the transmittal letter with the payoff check, which the trial court found more reliable than Harbin's testimony. Accordingly, the record does contain evidence to support the trial court's finding that the Borchers met the requirements of the statute.

### IV. Closing Attorney's Ability to Cancel and Satisfy

 The Bank argues the trial court erred by ruling it failed to satisfy the Mortgage because the closing attorney had the authority under section 29–3–330(e) of the South Carolina Code (Supp.2011) to satisfy and cancel the Mortgage. We disagree.

(e) Any licensed attorney admitted to practice in the State of South Carolina who can provide proof of payment of funds by evidence of payment made payable to the mortgagee, holder of record, servicer, or other party entitled to receive payment may record, or cause to be recorded, an

affidavit, in writing, duly executed in the presence of two witnesses and acknowledged pursuant to the Uniform Recognition of Acknowledgments Act in Chapter 3, Title 26, which states that full payment of the balance or payoff amount of the mortgage or other instrument securing the payment of money and being a lien upon real property has been made and that evidence of payment from the mortgagee, assignee, or servicer exists. This affidavit, duly recorded in the appropriate county, shall serve as notice of satisfaction of the mortgage and release of the lien upon the real property. The filing of the affidavit shall be sufficient to satisfy, release, or discharge the lien. Upon presentation of the instrument of satisfaction, release, or discharge, the officer or his deputy having charge of the recording of instruments shall record the same. This section may not be construed to require an attorney to record an affidavit pursuant to this item or to create liability for failure to file such affidavit.

§ 29-3-330(e).

Although section 29-3-330(e) does allow an attorney to enter an affidavit of satisfaction, nothing in section 29-3-310 or our case law suggests that because an attorney has the ability to satisfy a mortgage, the penalty under section 29-3-320 does not apply if a bank does not complete a proper request to satisfy the mortgage. Accordingly, the trial court did not err in finding the Bank violated section 29-3-310.

## CONCLUSION

Evidence supports the trial court's finding the Borchers met the requirements under section 29-3-310 of the South Carolina Code to demonstrate the Bank failed to satisfy the Mortgage, thus subjecting it to the penalty under section 29-3-320 of the South Carolina Code. Therefore, the trial court's decision is

**AFFIRMED.**

THOMAS, J., concurs.

FEW, C.J., dissenting.

I would reverse the circuit court's decision to award the Borchers a penalty under sections 29–3–310 and –320 of the South Carolina Code (2007) because there is no evidence in the record the Bank received a cancellation request from Richard C. Strawn—the only person entitled to make that request. Because no request to cancel was made, section 29–3–310 did not require cancellation of the mortgage and the section 29–3–320 penalty does not apply.

This case involves an open-ended mortgage. Section 29–3–50 of the South Carolina Code (2007) provides that an open-ended mortgage survives a sale of the underlying property and is binding on a subsequent purchaser. Our courts have recognized that open-ended mortgages serve a valid purpose and the occasional incidence of a seemingly-unfair result like the one in this case is justified by the purpose the open-ended mortgage was designed to serve. *See Cent. Prod. Credit Ass'n v. Page*, 268 S.C. 1, 8, 231 S.E.2d 210, 214 (1977) ("A holding that an open-end mortgage dies when there is currently no debt for it to secure, would severely limit its beneficial use and defeat the legislative intent."). Therefore, the mere fact that the balance of the loan secured by the mortgage is paid off does not require cancellation of the mortgage. Rather, the mortgage may not be cancelled unless the proper person requests it. Under some circumstances, a "person ... having an interest in any estate bound by the mortgage" may request cancellation. § 29–3–310. Here, however, the terms of the mortgage provided the only person with authority to request cancellation of the mortgage was Richard Strawn. *See Cent. Prod. Credit Ass'n*, 268 S.C. at 8, 231 S.E.2d at 214 (stating the predecessor to section 29–3–310 "permits the parties to agree that the mortgage live on until the mortgagor requests its cancellation"). This information was filed in the public record of Anderson County, and thus was readily available to the Borchers and their closing attorney. Viewing the evidence in the light most favorable to the Borchers, no person or entity even purporting to speak on behalf of Richard Strawn made any request to have the mortgage cancelled. The October 31, 2003 letter incorrectly states the mortgagor is "Cammie B. Strawn," who had been divorced from Richard Strawn since 2001. Cammie Strawn had no authority to

request cancellation of the mortgage. The closing attorney who made the request relied on by the majority did not represent Richard Strawn, who was not a party to the real estate transaction, and therefore the attorney's request was not made on Richard Strawn's behalf. There is no evidence in the record of any other request to cancel the mortgage. Because no evidence exists that a proper request for cancellation was made, there can be no liability under section 29–3–320 for failure to honor the request. The circuit court's award of punitive damages and attorney's fees is dependent on the validity of the statutory penalty. I would reverse and enter judgment for the Bank.