744 S.E.2d 552

Cathy C. BONE, Respondent,

v.

U.S. FOOD SERVICE and Indemnity Insurance
Company of North America, Petitioners.

Appellate Case No. 2010–171946.

No. 27278.

Supreme Court of South Carolina.

Heard Nov. 13, 2012.

Decided June 26, 2013.

68

Carmelo Barone Sammataro and Michael E. Chase, both of Turner, Padget, Graham & Laney, of Columbia, for Petitioners.

John S. Nichols and Blake Alexander Hewitt, both of Bluestein, Nichols, Thompson & Delgado, of Columbia, for Respondent.

Grady Larry Beard and Nicolas Lee Haigler, both of Sowell, Gray, Stepp & Lafitte, of Columbia; and Kirsten.

Leslie Barr, of Trask & Howell, of Mount Pleasant, for Amicus Curiae.

Justice BEATTY.

This is a workers' compensation case concerning the appealability of a circuit court order of remand. The employee, Cathy Bone ("Bone") filed a claim for an injury she alleged arose out of and in the course of her employment on June 26, 2007. The employer, U.S. Food Service, and its carrier, Indemnity Insurance Co. of North America (collectively, "Petitioners"), disputed the claim. The single commissioner and an Appellate Panel of the South Carolina Workers' Compensation Commission issued orders denying the claim. Under the procedure then in place, Bone appealed to the circuit court, which concluded the injury was compensable and remanded the matter to the Commission for further proceedings.[1]

Petitioners appealed the circuit court's order, and the Court of Appeals dismissed the appeal on the basis the order was not a "final judgment" and thus not immediately appealable because further proceedings were ordered before the administrative agency. *Bone v. U.S. Food Service*, S.C. Ct.App. Order dated June 30, 2010. This Court granted Petitioners' petition for a writ of certiorari to review the decision of the Court of Appeals, and we affirmed. *Bone v. U.S. Food Service*, 399 S.C. 566, 733 S.E.2d 200 (2012).

We subsequently granted a petition for rehearing filed by Petitioners, and we additionally granted the following two motions: (1) Bone's motion to argue against precedent, and (2) the motion of the South Carolina Defense Trial Attorneys' Association to accept its Amicus Curiae Brief in support of Petitioners. After considering the record in this matter, as well as the briefs and arguments, we adhere to our original decision to affirm.

## I. FACTS

Cathy C. Bone filed a workers' compensation claim form (Form 50) dated August 7, 2007 alleging that she injured her

---

1. This case arose under prior law that required an appeal from the Commission to be made first to the circuit court. Such appeals are now directed to the Court of Appeals for all injuries occurring on or after July 1, 2007. S.C.Code Ann. § 42–17–60 (Supp.2012); *Pee Dee Reg'l Transp. v. S.C. Second Injury Fund*, 375 S.C. 60, 650 S.E.2d 464 (2007).

back on Tuesday, June 26, 2007 while employed with U.S. Food Service. Her job consisted of power washing and cleaning the insides of truck trailers that transported food. Bone alleged that she hurt her back when she lifted two pallets inside a trailer to clean underneath them.

According to Bone, she did not report the incident immediately as she needed to continue working and believed she would be okay, but she thereafter developed increasing pain. On her way to work on Tuesday, July 3, 2007, Bone's vehicle developed a flat tire, and she called in to advise her office of this fact. Shortly after she arrived at work on July 3, Bone orally reported to one of her supervisors, Richard Thompson, that she had suffered an injury while working on June 26.

Petitioners (the employer and carrier) denied Bone's claim, disputing that she had injured her back on June 26 and asserting the injury had occurred, instead, when her tire was changed on July 3.

At the hearing in this matter, Bone testified that she did not physically change the tire herself; rather, she had pulled off the road and a gentleman in the parking lot of a nearby business had changed the tire for her. In contrast, Bone's supervisor, Thompson, testified that Bone was crying as she reported her injury on July 3 (which Bone conceded, explaining she was in a lot of pain). In addition, he recalled that Bone had told him that "she had to change her tire on her truck," which he interpreted to mean that she had personally changed the tire, and Bone never stated anyone had changed it for her. Bone disagreed with this interpretation as well as with the exact wording of her statement to Thompson. The supervisor did not dispute the fact that Bone had reported that her back injury occurred on June 26 as a result of lifting the pallets in the trailer.

The single commissioner found Bone failed to meet her burden of showing that she had sustained an injury by accident arising out of and in the course of her employment. The Appellate Panel of the Commission upheld the single commissioner's findings and conclusions in full.

The circuit court reversed. The circuit court stated, "The Commission denied the claim finding Claimant did not suffer an on the job injury, ostensibly finding Claimant injured her

back while changing her tire on July 3. However, a review of the records shows no evidence to support this finding."

The circuit court noted Petitioners "do[ ] not contest the existence or the degree of [Bone's] injury" and that "[t]he sole issue is when [her] injury occurred." The circuit court stated Bone gave consistent statements to Petitioners and to physicians that her injury occurred on June 26 and "there is absolutely no evidence in the record, let alone substantial evidence, that Claimant injured her back while changing a tire on the way to work on July 3, 2007." The circuit court noted Petitioners had argued that the supervisor's testimony that Bone reported having a flat tire on her way to work and having to change it, which the supervisor interpreted to mean she did it herself, together with the single commissioner's finding that Bone was not credible, supported the decision below. However, the circuit court stated the finding regarding credibility "goes only to the weight afforded [Bone's] testimony and in no way establishes [that her] injury occurred on July 3."

The circuit court concluded:

The evidence of record shows Claimant sustained a compensable injury. There is absolutely no evidence to the contrary. When the evidence is susceptible of only one inference, then [the] question is one of law for the Court. As such, as a matter of law, the Decision and Order of the Workers' Compensation Commission is hereby RE-VERSED and REMANDED to the Commission for proceedings consistent with this Order.

Petitioners appealed to the Court of Appeals. Bone moved to dismiss the appeal on the ground the circuit court's order was not immediately appealable. The Court of Appeals agreed and dismissed the appeal, finding the order remanding the matter to the Commission for further proceedings did not constitute a "final judgment" and thus was not immediately appealable, citing, *inter alia, Montjoy v. Asten–Hill Dryer Fabrics,* 316 S.C. 52, 52, 446 S.E.2d 618, 618 (1994) (stating our courts "have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable") and *Charlotte–Mecklenburg Hospital Authority v. South Carolina De-*

*partment of Health & Environmental Control*, 387 S.C. 265, 692 S.E.2d 894 (2010) (explaining that the general appealability statute, S.C.Code Ann. § 14–3–330(1) (1976), allowing appeals of intermediate orders "involving the merits," did not apply to appeals involving administrative agencies, which were governed by a different statutory scheme). *Bone v. U.S. Food Service*, S.C. Ct.App. Order dated June 30, 2010.

This Court granted Petitioners' petition for a writ of certiorari to review the determination of the Court of Appeals and affirmed. *Bone v. U.S. Food Service*, 399 S.C. 566, 733 S.E.2d 200 (2012). The Court subsequently granted Petitioners' petition for rehearing as well as Bone's motion to argue against precedent and the motion of the South Carolina Defense Trial Attorneys' Association to accept its Amicus Curiae Brief in support of Petitioners.

## II. LAW/ANALYSIS

█ The Administrative Procedures Act (APA) was enacted in 1977 and "purports to provide uniform procedures before State Boards and Commissions for judicial review after the exhaustion of administrative remedies." *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 132, 276 S.E.2d 304, 305 (1981). The APA establishes the standard for judicial review of decisions of the Commission. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 689 S.E.2d 615 (2010); *Lark*, 276 S.C. at 135, 276 S.E.2d at 306; *Eaddy v. Smurfit–Stone Container Corp.*, 355 S.C. 154, 584 S.E.2d 390 (Ct.App.2003).

█ Under section 1–23–380(A) of the APA, "[a] party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case [2] is entitled to judicial review...." S.C.Code Ann. § 1–23–380(A) (Supp.2007). "An agency decision which does not decide the merits of a contested case ... is not a final agency decision subject to judicial review...." *S.C. Baptist Hosp. v. S.C. Dep't of Health & Envt'l Control*, 291 S.C. 267, 270, 353

---

2. Section 1–23–380 originally provided for review by the circuit court, but it was amended in 2006 to direct appeals to the Court of Appeals. The workers' compensation statutory amendment making this change (§ 42–17–60) was not enacted until 2007 and applies to injuries on or after July 1, 2007, which is after the date of Bone's accident.

S.E.2d 277, 279 (1987). "A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." S.C.Code Ann. § 1–23–380(A).

In this case, the Commission denied Bone's claim in toto, and all parties agree the Commission's order was a final decision subject to initial appellate review in the circuit court because it disposed of the entirety of Bone's claim. However, the order under review by this court is the Court of Appeals's dismissal of the appeal of the circuit court's order that reversed the Commission and remanded the matter. The circuit court found that the Commission erred as a matter of law. Neither the Commission nor the circuit court addressed the severity of Bone's injury, whether or not she had reached MMI, or if she should be provided medical treatment. No award of any kind was made.

It is patently clear that the order from the circuit court remanding the matter to the Commission is not a final order. However, a preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy. S.C.Code Ann. § 1–23–380(A). Petitioners have an adequate remedy in that they may raise the issue of compensability on appeal of a final award.

Petitioners argue that the lack of an order awarding benefits to Bone is irrelevant. Petitioners posit that the circuit court's conclusion that Bone's injury is compensable as a matter of law is tantamount to a final judgment and is immediately appealable.

Section 1–23–390 of the APA, governing further appellate review, provides: "An aggrieved party may obtain a review of a *final judgment* of the circuit court or the court of appeals pursuant to this article by taking an appeal in the manner provided by the South Carolina Appellate Court Rules as in other civil cases." S.C.Code Ann. § 1–23–390 (Supp.2012) (emphasis added).[3] At issue here is the meaning of a "final judgment" under section 1–23–390.

---

3. The phrase "in the manner provided by the South Carolina Appellate Court Rules as in other civil cases" simply refers to following the same

 "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). "When a statute's language is plain and unambiguous and conveys a clear and definite meaning, the court has no right to impose another meaning." *Regions Bank v. Strawn*, 399 S.C. 530, 541, 732 S.E.2d 230, 236 (Ct.App.2012). "When 'the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself.'" *Id.* at 542, 732 S.E.2d at 236 (citation omitted).

On its face, the statute refers to a "final judgment," which is a well-established term of art in the law to which great significance is attached. *See Good v. Hartford Accident & Indem. Co.*, 201 S.C. 32, 21 S.E.2d 209 (1942) (holding if a judgment determines the applicable law while leaving open questions of fact, it is not a final judgment); *see also Charlotte–Mecklenburg Hosp. Auth. v. S.C. Dep't of Health & Envt'l Control*, 387 S.C. 265, 267, 692 S.E.2d 894, 895 (2010)("A final judgment disposes of the whole subject matter of the action or terminates the particular proceeding or action, leaving nothing to be done but to enforce by execution what has been determined." (citing *Good* )).

The Court of Appeals dismissed Petitioners' appeal of the ruling of the circuit court, which found Bone's claim was compensable and ordered a remand to the Commission for further proceedings in light of this initial determination. The dismissal was based on the fact that there was no "final judgment" as required by section 1–23–390 of the APA. We agree that the order remanding the matter to the Commission for further proceedings before entry of a final award was an intermediate judgment that did not dispose of the entirety of the action leaving nothing else for determination, nor did it terminate the proceedings, as articulated in *Charlotte–Mecklenburg*.

*Charlotte–Mecklenburg* concerned the interpretation of S.C.Code Ann. § 1–23–610(A)(1) (Supp.2009), which allows

procedures for briefing schedules, preparation of records, etc., as in other civil cases, and these rules do not supersede the APA provisions.

judicial review only from "final decisions" of the ALC. 387 S.C. at 266, 692 S.E.2d at 894. The Court there reasoned that appeals in administrative agency matters are governed solely by the APA, not by the general appealability statute of section 14–3–330(1), which permits review of "[a]ny intermediate judgment" involving the merits. *Id.* The Court stated the concepts applicable in general appeals were not applicable under the APA, as specialized statutes prevail over more general statutes. *Id.* In doing so, the Court specifically overruled both ALC and workers' compensation cases to the extent they applied this concept of "involving the merits" under section 14–3–330. *Id.* (overruling *Canteen v. McLeod Reg'l Med. Ctr.*, 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009) and *Oakwood Landfill, Inc. v. S.C. Dep't of Health & Envt'l Control*, 381 S.C. 120, 671 S.E.2d 646 (Ct.App.2009)).

■ We apply this reasoning in concluding that the meaning of a "final judgment" as used in section 1–23–390 is not defined by using the exceptions that are present in the general appealability statute, whether or not the statute is specifically referenced.

In doing so, we also rely upon the long-standing precedent of *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 446 S.E.2d 618 (1994), which involved an appeal from an order of the circuit court remanding the case to the Commission. This Court dismissed the appeal in *Montjoy* on the basis the circuit court's order was not directly appealable under the "final judgment rule" of the predecessor statute of section 1–23–390, which is substantially the same as the version applicable here. *Montjoy*, 316 S.C. at 52, 446 S.E.2d at 618. In *Montjoy*, the Court observed that "we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable." *Id.* The Court's order provides in full as follows:

This appeal is from an order of the circuit court remanding this case to the Workers' Compensation Commission. Respondent moves to dismiss the appeal on the ground the order is interlocutory and not directly appealable. We agree and dismiss the appeal.

S.C.Code Ann. § 1–23–390 (1986) provides:

> An aggrieved party may obtain a review of any final judgment of the circuit court under this article by appeal to the Supreme Court. The appeal shall be taken as in other civil cases.

Accordingly, we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable. *Owens v. Canal Wood Corp.*, 281 S.C. 491, 316 S.E.2d 385 (1984); *Hunt v. Whitt*, 279 S.C. 343, 306 S.E.2d 621 (1983). To the extent our recent decision in *Blakely v. State Board of Medical Examiners*, 310 S.C. 29, 425 S.E.2d 37 (1993), may be read to allow such an appeal, it is hereby overruled.

*Id.* at 52–53, 446 S.E.2d at 618.

Petitioners contend *Montjoy* did not specify the circumstances for the remand, so the cases that were string-cited in *Montjoy* are illustrative of the circumstances under which an appeal will lie.[4]

In contrast, we view the Court's failure in *Montjoy* to identify the nature of the remand as indicative that this was not a determinative factor. As we stated in *Charlotte–Mecklenburg*, the general appealability statute allowing appeals from decisions "involving the merits" has no place in the APA, which established a different appellate scheme.

In any event, a review of the record reveals that the underlying circumstances in *Montjoy* support our conclusion. In *Montjoy* the claimant sought workers' compensation bene-

---

4. In *Owens v. Canal Wood Corp.*, 281 S.C. 491, 316 S.E.2d 385 (1984), the Court held that a circuit court order remanding a workers' compensation case for the taking of additional testimony on the existence of an employer-employee relationship did not involve the merits of the action and was, therefore, interlocutory and not reviewable by the Supreme Court for lack of finality. Neither section 1–23–390 nor any other provision of the APA was cited, nor the general appealability statute.

In *Hunt v. Whitt*, 279 S.C. 343, 306 S.E.2d 621 (1983), which was also cited in *Montjoy*, the Court considered an appeal by the employer from an order of the circuit court reversing and remanding the case to the Commission to take additional medical testimony from the claimant. The Court stated that, because the interlocutory order did not involve the merits of the action, it was not reviewable for lack of finality. Again, the Court did not reference section 1–23–390, the APA, or the general appealability statute, but did overrule prior cases that could be construed as authorizing such appeals under the same circumstances. The cases overruled were all cases that predated the APA.

fits for the death of her husband, who she contended died of lung cancer as a result of exposure to asbestos at his workplace. Prior to any award of benefits, a hearing was held to determine the date of the husband's last exposure and the proper insurance carrier for coverage. The single commissioner determined the date of last asbestos exposure and identified the appropriate insurer. The Commission reversed. On appeal, the circuit court vacated the Commission's order and remanded the matter to the Commission for further action. The circuit court, Judge Jackson V. Gregory presiding, found that the Commission erred by considering evidence outside of the record. The employer and insurer appealed and argued that the remand order affected the merits and a substantial right as the Commission would be allowed to consider evidence from unrelated cases as long as this evidence is included in the record.

It is noteworthy that this Court apparently found that the assertion of the employer and insurer that the circuit court's order "involved the merits and affected a substantial right" was irrelevant. This Court's opinion made no mention of their assertion that the circuit court's order involved the merits and affected a substantial right. This Court simply decided that the matter was remanded to the agency; consequently, it was not immediately appealable.

In their petition for rehearing, Petitioners seek a "case-by-case analysis of finality" rather than "a rigid and formulaic approach that mandates dismissal of any interlocutory appeal...." [5] Petitioners essentially ask that we ignore the clear wording of section 1–23–390, which requires a "final judgment." This Court's jurisprudence is in accord with the definition of a final judgment found in Black's Law Dictionary. It defines a final judgment as "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs ... and enforcement of the judgment." *Black's Law Dictionary* 919 (9th ed.2009).

Petitioners assert the circuit court's determination that the injury was compensable "constituted a final determination of the rights of the parties and left nothing to be done by the

---

5. We believe the reference to an "interlocutory appeal" is a tacit recognition that there is a lack of finality.

Commission on remand other than execute the judgment." To the contrary, there is no enforceable judgment at this stage as the Commission is tasked with further obligations in determining the extent of Bone's compensation and in setting forth a final award that constitutes an executable judgment. An order as to compensability, without addressing the claimant's current medical status and specific benefits to be awarded, is not a final judgment disposing of the entirety of the action and leaving nothing further to be done but execution of the judgment.[6]

Petitioners attempt to distinguish *Charlotte–Mecklenburg* and *Montjoy*, arguing there are cases since *Montjoy* that have applied the "involving the merits" language. However, these are cases arising post-APA that apply a pre-APA appealability analysis of whether the order "involves the merits." For example, many of the cases purporting to allow an appeal involving the merits stem from a reliance on pre-APA cases such as *Chastain v. Spartan Mills*, 228 S.C. 61, 65, 88 S.E.2d 836, 837 (1955).[7] The *Chastain* Court properly found the order in that appeal was interlocutory and not appealable, but

---

6. *See generally Fisher v. E.I. Du Pont De Nemours*, 54 N.C.App. 176, 282 S.E.2d 543 (1981) (stating where the North Carolina Industrial Commission had determined the claimant had suffered a compensable injury by accident, but had not yet determined an award of compensation although it entered an order for costs, the appeal was premature; the court stated since the award of compensation the plaintiff is entitled to receive had not been determined, no final award had been entered for purposes of appellate review); *see also Sign Plex v. Tholl*, 863 So.2d 1113 (Ala.Civ.App.2003) (stating a judgment determining only the compensability of an injury, but which contains no provision specifying the amount of compensation, was not a final judgment for purposes of appeal).

7. *Chastain v. Spartan Mills*, 228 S.C. 61, 65, 88 S.E.2d 836, 837 (1955) (holding the Commission's order reversing an award and remanding the case to the single commissioner to take further testimony was not final and not appealable to the circuit court until the Commission's final determination regarding the single commissioner's award; the Court construed the language in a provision of the Code that states appeals from the Commission to the circuit court "shall be 'under the same terms and conditions as govern appeals in ordinary civil actions' " and stated an appeal to the circuit court will not lie from an interlocutory order of the Commission unless it "affects the merits" (citation omitted)). However, the Court did not cite to any specific provisions for this standard.

it used "affecting the merits" language that was correct at the time, but which did not survive the adoption of the APA. Later cases, primarily from the Court of Appeals, as noted by the dissent, continued to repeat this concept, however.

For example, in *King v. Singer Co.*, 276 S.C. 419, 420, 279 S.E.2d 367, 367 (1981), this Court held that a circuit court order reversing a determination of the Industrial Commission that the hearing commissioner erred in failing to submit the case to a medical board was not immediately appealable because it "is a matter not affecting the merits of the cause of action." In so ruling, the Court cited both *Chastain* and S.C.Code Ann. § 14–3–330 (1976) for this standard. *Id.* As noted in *Charlotte–Mecklenburg*, however, any reliance on section 14–3–330 and its concepts is inappropriate in APA matters.

In addition, in *Canteen v. McLeod Regional Medical Center*, 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009), the Court of Appeals found the Appellate Panel's order reversing the hearing commissioner's finding of compensable brain damage involved the merits and was, therefore, immediately appealable. In support of this standard of "involving the merits," the Court of Appeals in *Canteen* did not specifically cite to section 14–3–330; however, it did cite a case for this proposition that, in turn, cited *Chastain*. *Id.* at 621, 682 S.E.2d at 505–06 (citing *Green v. City of Columbia*, 311 S.C. 78, 79–80, 427 S.E.2d 685, 687 (Ct.App.1993)). Canteen was overruled by this Court in our Charlotte–Mecklenburg decision.

Petitioners assert the concept of allowing appeals from intermediate judgments involving the merits has always been applied in these cases, and some cases do not appear to specifically rely upon section 14–3–330. Although some cases do not explicitly cite to section 14–3–330, they often fail to cite to any supporting authority for the application of this standard. In addition, we overruled *Canteen* even though it did not specifically reference section 14–3–330, as it relied upon its concepts. We find it would be inconsistent to declare that section 14–3–330's standard of "involving the merits" does not apply to APA cases, while simultaneously allowing the same concept of "involving the merits" to be applied by simply asserting the statute is not being relied upon. Under any

name, the end result is the same. To impose a changeable definition of a "final judgment," in the absence of a statutory directive to do so, would create more, rather than less, uncertainty in appellate practice in this area.

Petitioners would have us conflate the statutorily-required appellate procedure for actions governed by the APA with the general appellate procedure for civil actions. This would create a hybrid appellate process within the APA where immediate appealability is determined not by finality of judgment, but by the agency that issued the challenged order. If the order originates from the Workers' Compensation Commission final judgment is irrelevant; however, if it originates from any other agency, finality of judgment is dispositive. Petitioners' position imposes an unwarranted complication in the appellate process for administrative matters and would serve only to delay the final resolution of cases. Petitioners misapprehend the policy interest at play here. The legislative policy expressed in section 1–23–390 is intended to avoid the undue delay and waste of judicial resources caused by interlocutory appeals.

The dissent and Petitioners repeatedly make reference to Court of Appeals cases that utilized the pre-APA "affecting the merits" language. A case from the Court of Appeals, *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 622 S.E.2d 546 (Ct.App.2005), cites to *Montjoy* and *Montjoy*'s reference to *Owens* and *Hunt,* all cases from this Court. However, these cases are distinguishable. Although the "affecting the merits" language was used, each of those cases was remanded to take additional evidence. Therefore, they were clearly interlocutory and did not affect the merits.

More importantly, the dissent and Petitioners overlook our reference in *Montjoy* to *Blakely v. State Board of Medical Examiners,* 310 S.C. 29, 425 S.E.2d 37 (1993). We specifically said that *Blakely* was overruled to the extent that it may be read to allow an appeal of a circuit court order remanding a case for additional proceedings. *Montjoy,* 316 S.C. at 52–53, 446 S.E.2d at 618. In *Blakely,* the Board of Medical Examiners had issued a final order suspending Blakely, fined him $2,500, and required him to complete additional continuing medical education and pass the Special Purpose Examination.

*Blakely,* 310 S.C. at 30, 425 S.E.2d at 38. Blakely appealed to the circuit court, which remanded the case to the Board with instructions. *Id.* at 30–31, 425 S.E.2d at 38. The Board failed to follow the circuit court's instructions and instead issued an amended order. *Id.* Four months later, Blakely moved to compel compliance with the court's first order of remand. *Id.* at 31, 425 S.E.2d at 38. The circuit court granted Blakely's motion to compel and the Board appealed. *Id.* Although this Court denied Blakely's motion to dismiss the appeal[8] we said:

> We also note the Board should have appealed the first order of the circuit court, as it is apparent from the record the Board did not agree with the circuit court's order. Because the orders were *not interlocutory* orders and not timely appealed, the orders became the law of the case.

*Id.* at 31–32, 425 S.E.2d at 39 (emphasis added).

 The circuit court's remand orders in *Blakely* undoubtedly affected the merits of the case. The import of the *Blakely* reference in *Montjoy* is that, contrary to the *Blakely* Court, this Court in *Montjoy* wanted it understood that, although the circuit court orders were not interlocutory, they were not immediately appealable because the circuit court's orders remanded the case to the Board. That being said, *Montjoy* makes it clear that the only relevant question here is whether or not the case has been remanded to the administrative agency. In the current appeal, all parties agree that it was. Therefore, the order of remand is not appealable. *Montjoy* 's reference to *Blakely* also makes it clear that the fact that the circuit court heard the matter in its appellate capacity is irrelevant and does not change the analytical framework.

Petitioners and the South Carolina Defense Trial Attorneys' Association[9] lastly argue it is "unfair" and "inequitable" to allow a claimant to receive benefits while the matter is pending on appeal, since there is no stay of an award applicable here. *See* S.C.Code Ann. § 42–17–60 (Supp.2012) ("In the

---

8. The motion to compel in *Blakely* was construed as an appeal of the Board's second order. As such it was untimely.

9. The Association has filed an Amicus Curiae Brief in support of Petitioners.

case of an appeal from the decision of the commission on questions of law, the appeal does not operate as a supersedeas and, after that time, the employer is required to make weekly payments of compensation and to provide medical treatment ordered by the commission involved in the appeal or certification until the questions at issue have been fully determined in accordance with the provisions of this title."); Rule 241(b)(7), SCACR (stating the general rule that a notice of appeal acts to automatically stay matters decided in the order does not apply to "[w]orkers' compensation awards as provided in S.C.Code Ann. § 42–17–60"). Petitioners' allegation of unfairness is both unfounded and unpersuasive.

Petitioners, however, do not address the opposite result, i.e., what happens when a claimant is denied benefits and is made to wait during the pendency of appeals by their employer and the insurance carrier, when the ultimate determination is made that the claimant suffered a compensable injury for which medical care and benefits were wrongfully withheld? The claimant may receive interest after the fact, per S.C.Code Ann. § 42–17–60, but there is no provision for medical support during this time. Claimants and employers are treated the same depending upon who prevails before the Commission. Moreover, there has been no definitive, enforceable award entered in this case. That is the point being made here.

■ The legislature, in using a well-known term of art such as "final judgment," meant exactly what "final judgment" has always been understood to mean: something that finally disposes of the whole subject matter of the action or terminates the action, leaving nothing to be done but to execute the judgment, which comports with the definition in *Charlotte–Mecklenburg*.

If the legislature did not then or no longer intends this result, it is free to amend the specific language it chose to use and can allow appeals in other circumstances, including those specified in section 14–3–330. Until there is a definitive statement to the contrary from the legislature, however, it is arguably more equitable not to deny workers their benefits in these circumstances since the legislature clearly intended awards to continue during appeal, per S.C.Code Ann. § 42–17–60, as is also recognized by Rule 241(b)(7), SCACR. More-

over, a "case-by-case" determination, as urged by Petitioners, would frustrate the main goals of both the workers' compensation scheme, which is to streamline the process for providing benefits to injured workers in exchange for the employee's release of the employer from tort liability, and that of the APA, which is to provide clear and uniform procedures in agency cases.

## III. CONCLUSION

In agency appeals, the APA is controlling over general provisions that conflict with its terms. In this case, there is a specific statute in the APA that governs appeals in administrative cases, section 1–23–390, and it limits appeals to those from final judgments. Therefore, section 14–3–330, a general appealability statute allowing interlocutory appeals in certain instances, and its concepts are not applicable here. The definition of a "final judgment" used in *Charlotte–Mecklenburg,* as further detailed in the reference to Black's Law Dictionary incorporated in this opinion, should be the point of reference in any analysis of that term when applying section 1–23–390. Consequently, we affirm the decision of the Court of Appeals, which found the current order remanding the matter to the Commission for further proceedings does not constitute a final judgment as required by section 1–23–390 and, therefore, is not immediately appealable.

**AFFIRMED.**

TOAL, C.J., concurs. PLEICONES, J., concurring in result only. HEARN, J., dissenting in a separate opinion, in which KITTREDGE, J., concurs.

Justice HEARN.

I respectfully dissent. While I agree that Section 1–23–390 is the controlling statute, I do not agree that the circuit court's order resolving the issue of compensability was not a final order from which a further appeal could be taken.

To begin, I agree with the majority that the APA governs appealability in administrative cases, which means the general rules of appealability do not apply. The APA provides appealability standards for two different stages of appeals: from the

administrative body to the judiciary and further appellate review within the courts. This case involves only the latter, which is controlled by section 1–23–390. I also agree that the heart of this case is what the words "final judgment" in section 1–23–390 mean, but I disagree with the majority's interpretation of that term. In my view, the test which has heretofore been applied to determine whether an appellate decision is a "final judgment" eligible for further review under section 1–23–390 is whether the order finally determines an issue affecting a substantial right on the merits. The circuit court order under review in this case is just such an order.

The first time we expressly interpreted this statute was in *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 446 S.E.2d 618 (1994). At the time that case was decided, section 1–23–390 read: "An aggrieved party may obtain a review of any final judgment of the circuit court under this article by appeal to the Supreme Court. The appeal shall be taken as in other civil cases." S.C.Code Ann. § 1–23–390 (1986). Under this standard, which is similar to the present version of section 1–23–390, "we have consistently held that an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable." *Montjoy*, 316 S.C. at 52, 446 S.E.2d at 618 (1994).

Because the scope of the remand in *Montjoy* is not apparent from the opinion, it is necessary to examine the two workers' compensation cases relied on therein in order to fully understand the parameters of its holding: *Hunt v. Whitt*, 279 S.C. 343, 306 S.E.2d 621 (1983), and *Owens v. Canal Wood Corp.*, 281 S.C. 491, 316 S.E.2d 385 (1984).[10] In both *Hunt* and *Owens*, the circuit court remanded to the full commission for the taking of additional testimony. We held that neither order was reviewable by this Court because they did not involve the merits of the action and were therefore interlocutory.

The circuit court order in this case, however, unlike the orders in *Hunt* and *Owens*, resolved the issue of compensability with finality and was clearly appealable, just as the full

---

**10.** Section 1–23–390 was passed into law in 1977. *See* 1977 Act No. 176, Art. II, § 9. Accordingly, even though they do not cite this statute, *Hunt* and *Owens* were governed by it.

commission's order, which was also a final decision on compensability, was appealable by Bone in the first instance. Both parties conceded at re-argument that upon remand, the full commission will have no alternative but to make an award to Bone, the circuit court having reached the ultimate issue in the case—whether Bone suffered a compensable injury. Nevertheless, Bone has stunningly succeeded in arguing to the majority that while she was entitled to appeal the full commission's decision to the circuit court, once the circuit court reversed the commission's finding of no compensability, the order was transformed into an unappealable order and the employer is precluded from appealing further until after the remand results in an award to Bone. I cannot accept the premise that by reversing the commission on a factually-driven issue and remanding, an appellate court—in this instance the circuit court—can cut off further review up the appellate chain. If Bone could appeal the full commission's decision against her on the issue of compensability, then surely the employer is entitled to appeal the circuit court's order reversing that finding. In other words, appealability, once established, should not be extinguished by one level of appellate review; appealability should not be a moving target.

I would argue a bright line rule is not only impermissible under the statutory framework and *Charlotte–Mecklenburg,* but also is not necessary. In the years since *Montjoy,* the court of appeals had many opportunities to evaluate appealability under section 1–23–390. In particular, the court of appeals examined the issue at length in *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 622 S.E.2d 546 (Ct.App.2005). There, Brown, a worker in a cotton mill, developed breathing problems after years of service. *Id.* at 383, 622 S.E.2d at 549. Although he also smoked cigarettes for forty-five years, he claimed the respiratory troubles he developed were caused by his work in the mill. *Id.* at 382, 622 S.E.2d at 548. Despite the evidence to the contrary, the single commissioner concluded Brown's "respiratory disease arose out of and in the course of his employment; said disease was due to hazards of the employment which are excess of hazards normally incident to normal employees." *Id.* at 384, 622 S.E.2d at 550. The full commission affirmed. *Id.* at 385, 622 S.E.2d at 550. The circuit court, however, held Brown's smoking was a contribut-

ing cause of his illness, and therefore the mill was entitled to a reduction in the compensation it owed. *Id.* at 386, 622 S.E.2d at 550. Accordingly, the circuit court remanded for a determination of the size of the reduction. *Id.*

Brown appealed, and the mill argued the order remanding to the commission was not immediately appealable. *Id.* at 386, 622 S.E.2d at 550–51. The court of appeals, citing section 1–23–390, *Montjoy, Owens,* and *Hunt,* held that "in determining whether the court's order constitutes a final judgment, we must inquire whether the order finally decides an issue on the merits." *Id.* at 387, 622 S.E.2d at 551. As the court went on to note, " 'An order involves the merits if it finally determines some substantial matter forming the whole or part of some cause of action or defense in the case.' " *Id.* (quoting *Green v. City of Columbia,* 311 S.C. 78, 80, 427 S.E.2d 685, 687 (Ct.App. 1993)). Because the circuit court finally determined that Brown's smoking contributed to his injuries, its order was a final judgment under section 1–23–390 and therefore was appealable. *Id.* at 388, 622 S.E.2d at 551. The fact the circuit court had also remanded the proceedings was of no moment because "the panel would have no choice but to allocate some part of Brown's disability to the non-compensable cause." *Id.* As both parties conceded at re-argument, this is precisely the situation facing the commission upon remand here.

The court of appeals reached the same result in *Mungo v. Rental Uniform Service of Florence, Inc.,* 383 S.C. 270, 678 S.E.2d 825 (Ct.App.2009). In that case, the claimant, Mungo, alleged a change in condition that would entitle her to more benefits than she originally was awarded for her injuries. *See id.* at 276, 678 S.E.2d at 828. The single commissioner denied her request because the report she used to show a change in condition was completed prior to the original hearing. *Id.* The full commission affirmed, and Mungo appealed to the circuit court. *Id.* The court reversed, holding the report could be considered and Mungo had demonstrated a change in condition. *Id.* at 276–77, 678 S.E.2d at 828. Accordingly, the court remanded to the commission for a determination of "the precise benefits owed to [Mungo] for her change in condition and for her psychological condition." *Id.* at 277, 678 S.E.2d at 828–29.

The employer sought review before the court of appeals, and the threshold question was whether the circuit court's order was appealable. *Id.* at 277, 678 S.E.2d at 829. Relying in part on *Brown*, the court found it was appealable, stating:

The circuit court's order mandates an award for change of condition.... This ruling is a decision on the merits because it decides with finality whether [Mungo] proved these changes in her condition. Although the circuit court remanded the issue of the precise damages to be awarded to [Mungo], the single commissioner would have no choice but to award some damages to [her]. Accordingly, the circuit court's order constitutes a final decision and is appealable.

*Id.* at 278, 678 S.E.2d at 829.

The court of appeals also has used this same framework to determine when an order of the circuit court is *not* appealable. For example, in *Foggie v. General Electric Co.*, 376 S.C. 384, 656 S.E.2d 395 (Ct.App.2008), the circuit court held the full commission's finding of permanent total disability rested, at least in part, on evidence which should have been excluded. *Id.* at 387, 656 S.E.2d at 397. The court also found the commission did not make any findings regarding a potential credit to the employer for previous psychological injuries the employee sustained. *Id.* at 387–88, 656 S.E.2d at 397. Consequently, the court remanded with instructions for the commission to review the record without the excluded evidence and determine whether the employee was still permanently and totally disabled, and to make findings regarding the employer's entitlement to the credit. *Id.*

The employee appealed, and the court of appeals held the circuit court had not made a final determination of whether the employee was totally and permanently disabled or whether the employer could receive any credit. *Id.* at 389, 656 S.E.2d at 398. Accordingly, the circuit court's order was not immediately appealable. *Id.; see also McCrea v. City of Georgetown*, 384 S.C. 328, 333, 681 S.E.2d 918, 921 (Ct.App.2009) ("The circuit court's order was not a final judgment and did not involve the merits of the case. The circuit court remanded the case to the Commission so that additional evidence could be entered into the record without determining whether Claimant

was disabled or whether Employer was entitled to stop payments. As such, this appeal is interlocutory.").

Accordingly, prior to today, the test consistently applied in this State to determine whether an appellate decision was eligible for further review under section 1–23–390 was whether the order finally determined an issue affecting a substantial right on the merits. Under that framework, there could be little question that employer is entitled to appeal the circuit court's decision that there was no evidence to support the full commission's conclusion that Bone was not injured on the job because that decision affected a substantial right on the merits—Bone's entitlement to benefits. However, rather than applying this traditional test, the majority holds that *Charlotte–Mecklenburg* rejected the "involving the merits" analysis under the APA and implicitly overruled a long line of cases. While I believe *Charlotte–Mecklenburg* was properly decided, it has no impact on this case.

In *Charlotte–Mecklenburg*, the Administrative Law Court (ALC) partially granted summary judgment and remanded for the Department of Health and Environmental Control to decide whether any party was entitled to a certificate of need.[11] 387 S.C. at 266, 692 S.E.2d at 894. One of the parties appealed the ALC's order, and we dismissed the appeal as interlocutory. *Id.* The controlling statute in *Charlotte–Mecklenburg* was not section 1–23–390. Instead, it was Section 1–23–610 of the South Carolina Code (Supp.2011), which provides "for judicial review of a final decision of *an administrative law judge*."[12] (emphasis added). We defined a final decision in this context as follows:

---

11. In order to obtain permission to construct certain healthcare facilities, the facility must demonstrate the need for the proposed facility. *See* S.C.Code Ann. § 44–7–110, *et seq.* (2002 & Supp.2011).

12. The statute governing appeals from the Workers' Compensation Commission is Section 1–23–380 of the South Carolina Code (Supp. 2011), a sister statute of section 1–23–610, which similarly provides that "[a] party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review." I agree with the majority that *Charlotte–Mecklenburg* 's interpretation of section 1–23–610 applies equally to section 1–23–380.

If there is some further act which must be done by the court prior to a determination of the rights of the parties, the order is interlocutory. A judgment which determines the applicable law, but leaves open questions of fact, is not a final judgment. A final judgment disposes of the whole subject matter of the action or terminates the particular proceeding or action, leaving nothing to be done but to enforce by execution what has been determined.

*Charlotte–Mecklenburg*, 387 S.C. at 267, 692 S.E.2d at 894–95 (internal citations omitted). Because the ALC's order did not finally determine whether any party was entitled to a certificate of need, the order under review was not a final decision and thus not immediately appealable.[13] *Id.* at 267, 692 S.E.2d at 895.

The majority therefore is correct that *Charlotte–Mecklenburg* rejected an "involving the merits" analysis *with respect to administrative and agency decisions*. *See id.* at 266, 692 S.E.2d at 894 ("[A]lthough § 14-3-330 permits appeals from interlocutory orders which involve the merits, that section is inapplicable in cases where a party seeks review of a decision of the ALC because the more specific statute, § 1-23-610, limits review to final decisions of the ALC."). *Charlotte–Mecklenburg* therefore examined a different statute and a different stage in the appellate process for administrative cases. Rather than determining whether an order of the circuit court sitting in an appellate capacity or the court of appeals is ripe for further review up the appellate chain, *Charlotte–Mecklenburg* only concerned whether the *administrative* order itself is final and therefore appealable to the judicial branch in the first instance. It went no further than that, and I believe the majority is in error in stretching it's

---

**13.** In reaching this result, we overruled two cases "to the extent [they] rely on [Section 14-3-330 of the South Carolina Code (1976)] to permit the appeal of interlocutory orders of the ALC or an administrative agency." *Charlotte–Mecklenburg*, 387 S.C. at 266, 692 S.E.2d at 894. The cases were *Canteen v. McLeod Regional Medical Center*, 384 S.C. 617, 682 S.E.2d 504 (Ct.App.2009) and *Oakwood Landfill, Inc. v. South Carolina Department of Health & Environmental Control*, 381 S.C. 120, 671 S.E.2d 646 (Ct.App.2009). Both of these cases concerned the initial appeal of an administrative order, not further appellate review of an order of the circuit court. *See Canteen*, 384 S.C. at 624, 682 S.E.2d at 507; *Oakwood*, 381 S.C. at 132, 671 S.E.2d at 653.

holding beyond the clearly delineated bounds of the opinion. Indeed, the opinion in *Charlotte–Mecklenburg* was issued without either briefing or oral argument; it was issued solely on the basis of a motion to dismiss and supporting memoranda. It is inconceivable that we could have intended to undo years of appellate precedent, not to mention impact the appealability of orders at an entirely different stage in the proceedings.

Put in the context of this case, *Charlotte–Mecklenburg* governs the appealability of the full commission's decision, not the appealability of the circuit court's order reviewing the commission's decision. Because the full commission found Bone's claim was not compensable, it rendered a final judgment and the circuit court could entertain the appeal under *Charlotte–Mecklenburg.* At this point, appealability ceased to be governed by *Charlotte–Mecklenburg* and was then controlled by section 1–23–390. Thus while I believe that *Charlotte–Mecklenburg* is correct, given its procedural posture, I do not believe it has any impact on the case before us.

The majority also suggests its decision will not only further judicial economy but also serve the Workers' Compensation Act's underlying purpose of affording compensation to injured workers. The majority asserts that, as between the two parties, the employer is in a better position to shoulder the payment of benefits during the pendency of an eventual appeal. That position misses the point that the Act is designed to provide benefits to workers *who are injured on the job,* a fact which the employer disputes and which the full commission decided in its favor. No employer should have to pay benefits until the worker establishes before the fact-finder, which is the full commission, that she has sustained a compensable injury. Bone simply has not done that yet, and it cannot be good public policy to require employers to pay benefits without the issue of compensability of the claim being finally adjudicated. The employer is entitled, not only under the law, but also on public policy grounds, to have the circuit court's order on compensability reviewed by the highest court. It is neither good law nor good policy to hold that the appellate chain can be broken when, at the first layer of appellate review, the court reverses the fact-finder and sends

the case back for the commission to perform the perfunctory task of setting compensation for the worker.

Moreover, the interests of judicial economy demand a rejection of the majority's view. Taken to its logical conclusion, the majority's position could have cases trapped in a cycle of remands for years. In this case, once the full commission renders a decision on the benefits owing to Bone, the parties will return again to the court of appeals. In doing so, the employer runs the risk that the court of appeals will again remand the case, at which point it will have to start the process all over again. Only after that court issues its "final" order—assuming it finds nothing else warranting a remand—will the employer finally be able to argue to this Court that the full commission correctly held Bone's claim was not compensable back in June of 2008.

Because I believe the issue of compensability was finally decided by the full commission and the circuit court, sitting in an appellate capacity, could not thwart further appellate review by ordering a remand, I would find the order appealable under section 1–23–390. *See Mungo*, 383 S.C. at 278, 678 S.E.2d at 829 ("Although the circuit court remanded the issue of the precise damages to be awarded to Claimant, the single commissioner would have no choice but to award some damages to Claimant. Accordingly, the circuit court's order constitutes a final decision and is appealable."); *Brown*, 366 S.C. at 387–88, 622 S.E.2d at 551 (holding circuit court's order that apportionment was required was final and appealable even though the court remanded for a determination of the amount of apportionment due). Nothing in *Charlotte–Mecklenburg* impacts this decision; rather, it results from a straight-forward application of section 1–23–390, which permits an appeal from a final decision involving the merits of the substantive issue in this case. I would hold that the court of appeals erred in dismissing the employer's appeal.

KITTREDGE, J., concurs.